**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFERY B. SANFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO. 3:08-cv-161-WHA** |
| | ) | |
| **SHERIFF JAY JONES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' SPECIAL REPORT AND ANSWER**

COME NOW the Defendants in the above-styled cause, Lee County, Alabama Sheriff

Jay Jones, and Lee County, Alabama Sheriff's Officers Major Cary Torbert, Captain Corey

Welch, Lieutenant Timothy Jones, Lieutenant Ray Roberson, and Sergeant Rodney Tabb, and

submit their Special Report and Answer to the Court as follows:

**I.     INTRODUCTION**

The Plaintiff in this action, Jeffery B. Sanford, filed his Complaint in the United States

District Court for the Middle District of Alabama on March 7, 2008.  The Plaintiff has, on

several occasions, been incarcerated in the Lee County, Alabama Detention Center.   The

incarceration from which the Plaintiff's Complaint arises began on September 12, 2007, when

the Plaintiff was arrested and incarcerated for probation violation stemming from his conviction

of Theft of Property.  After his probation was revoked, the Plaintiff was released from the Lee

County, Alabama Detention Center to the custody of the State of Alabama Department of

Corrections on March 25, 2008.  He is currently serving a ten-year sentence with the Department

of Corrections.  (See Exhibit 1, Intake and Release Documents from the Lee County Sheriff's

Office, including Plaintiff's Booking Sheet, Charge Sheet, 2 Committal to Custody forms, 2

Alabama Judicial Data Center Conviction Reports, an Alabama Uniform Arrest Report, an Inmate Information Sheet, and an Inmate Release Sheet.)

The Defendants have been ordered to respond to the Plaintiff's claims by the filing of this report.

## II.    PLAINTIFF'S ALLEGATIONS

As set out in his Complaint, the Plaintiff attempts to state the following claims for relief:

1.    That he was subjected to a fire hazard while incarcerated in the Lee County, Alabama Detention Center;

2.    That he was discriminated against due to the fact that his housing area in the Lee County Detention Center was not entitled to regular programs, religious services, or outside exercise;

3.    That the intercom system in the Lee County Detention Center did not work during a part of his incarceration and that officers do not make regular cell checks;

4.    That meals served in the Lee County Detention Center are too small, often cold, or undercooked, and do not provide a balanced diet; and

5.    That the commissary system "fleeces" inmates by taking a percentage of the money deposited into their accounts, and an additional percentage when it is spent.

## III.    DEFENDANTS' RESPONSE TO THE PLAINTIFF'S ALLEGATIONS

The Defendants in this matter, Jay Jones, Cary Torbert, Corey Welch, Timothy Jones, Rodney Tabb, and Ray Roberson, deny each of the allegations made against them by the Plaintiff, and state affirmatively that said allegations are untrue, and completely without basis in law or fact.

A.    **POLICIES AND PROCEDURES OF THE LEE COUNTY DETENTION CENTER**

The Lee County, Alabama Detention Center operates pursuant to written policies and procedures.  All members of the Detention Center staff, including the Defendants in this matter, are charged with the responsibility of being familiar with the policies and procedures governing the operation of the Detention Center, and following those procedures and policies as they carry out their duties.  (See Affidavit of Major Cary Torbert, "Torbert Aff.")

All members of the Lee County Sheriff's Office are required to receive classroom training at a certified corrections academy.  In addition to formal training, all members of the Detention Center's staff receive on-the-job training.  These methods of training include all aspects of the Detention Center's operation, as well emphasis upon the policies and procedures set in place by the Lee County Sheriff for the operation of the Detention Center.  (See Torbert Aff.)

It is the policy of the Lee County Sheriff's Office that members of the Lee County Detention Center staff be prepared for emergency situations which may be encountered within the Detention Center and that they be prepared to take steps to safeguard the lives of all persons within the facility, including inmates, at such times.  (See Torbert Aff.; and Exhibit 2, Lee County Sheriff's Department Policy and Procedure Manual, Section 8 – Emergency Situations, Title 8.01 "Emergency Plans and Procedure."

It is the policy of the Lee County Sheriff's Office that all persons employed at the Lee County Detention Center be familiar with the Detention Center's door operations in order to ensure that persons within the Detention Center may be safely evacuated in the event of an emergency.  All members of the Detention Center staff are trained in the use of the manual door release system, and in the use of keys to operate doors within the facility.  (See Torbert Aff.; and

Exhibit 3, Lee County Sheriff's Office Policy and Procedure Manual, Section 8 – Emergency Situations, Title 8.03 "Emergency Door Operation.")

It is the policy of the Lee County Sheriff's Office that the safety of employees, inmates, and visitors at the Lee County Detention Center be maximized through compliance with local and national fire safety requirements. In order to accomplish this goal, the Detention Center staff maintains an adequate fire protection service, regularly inspects the facility for safety hazards, regularly tests equipment, and places fire extinguishers at appropriate locations throughout the facility. An automatic fire and smoke detection system is present within the facility and kept in working order. Furnishings within the Detention Center are made of materials which either do not burn, or burn only with difficulty. All internal finishing materials are applied in accordance with recognized fire safety codes. All exits within the Detention Center are distinctly and permanently marked, and all travel distances to exits are in compliance with fire safety codes. Necessary equipment to maintain lights, power, and communications during an emergency is present at the Detention Center. (See Torbert Aff.; and Exhibit 4, Lee County Sheriff's Office Policy and Procedure Manual, Section 8 – Emergency Situations, Title 8.04 "Fire and Safety Requirement.")

It is the policy of the Lee County Sheriff's Office that fire and safety inspections be conducted weekly at the Detention Center. Any problems found during such inspections are brought to the attention of the Chief Deputy or another appropriate officer and the problems are, if possible, immediately corrected. One member of the Detention Center staff is appointed to act as a Fire Prevention Officer or, in effect, an "in-house Fire Marshal" for the Detention Center. This person is charged with being responsible for knowing all fire codes applicable to the Detention Center and arranging for the training of the staff in fire prevention and control

measures. (See Torbert Aff.; Ex. 4, and Exhibit 5, Lee County Sheriff's Office Policy and Procedure Manual, Section 2 – Administration, Organization, and Management, Title 2.10 "Fire Safety.")

In addition to the above, the Chief Deputy is required to conduct an inspection of the entire facility for fire and safety procedures at least once each quarter. During this inspection testing is made of the fire alarm system, the smoke detection system, emergency equipment and lighting, all exits, evacuation plans, and general fire code compliance. All members of the Detention Center staff are trained to be on alert for possible fire hazards in the facility, and to immediately report such hazards to a superior officer. It is the responsibility of that officer, once a report has been made, to correct such situation immediately, or if it cannot be corrected, to report it to the Fire Prevention Officer or Chief Deputy for other action. Fire drills are required to take place at least twice yearly at the discretion of the Chief Deputy. (See Torbert Aff.; and Ex. 4.)

It is the policy of the Lee County Sheriff's Office that, in the event of a fire in the Lee County Detention Center, the primary objective of the Detention Center shall be the protection of lives of inmates, staff, and visitors. (See Torbert Aff.; and Exhibit 6, Lee County Sheriff's Office Policy and Procedure Manual, Section 8 – Emergency Situations, Title 8.05 "Fire Emergency.")

The Lee County Detention Center is operated according to a code of ethics which requires the Detention Center staff conduct themselves in such a manner so as to ensure that inmates are dealt with in a constitutional, honest, fair, and impartial manner. (See Torbert Aff.; and Exhibit 7, Lee County Sheriff's Office Policy and Procedure Manual, Section 2 – Administration, Organization, and Management, Title 2.02 "Code of Ethics.")

It is the policy of the Lee County Sheriff's Office that persons employed at the Lee County Detention Center be aware of, and protect, inmate rights, both civil and legal. Members of the Detention Center staff are required to recognize that an inmate's rights include access to programs and work assignments, and the fair and equal administration of discipline within the facility. (See Torbert Aff.; and Exhibit 8, Lee County Sheriff's Office Policy and Procedure Manual, Section 14 – Inmate Rights, Title 14.01 "Inmate Rights.")

It is the policy of the Lee County Sheriff's Office to allow persons incarcerated in the Lee County Detention Center the opportunity to worship in the recognized religion of their choice, receive religious counseling, and, insofar as possible, attend in-house religious programs. Inmates who are held in administrative segregation may not be allowed to attend in-house programs or meetings, but may receive ministry or religious counseling individually. In addition, no inmate who, in the opinion of the Sheriff, Chief Deputy, or a shift supervisor, presents a security risk, may attend religious services. Such inmates are allowed free access to religious counseling or conferences on an individual basis. Members of the Detention Center staff are prohibited from discriminating against any inmate based upon his religion. (See Torbert Aff.; and Exhibit 9, Lee County Sheriff's Office Policy and Procedure Manual, Section 14 – Inmate Rights, Title 14.06 "Religion.")

It is the policy of the Lee County Sheriff's Office that persons incarcerated in the Lee County Detention Center be provided with opportunities for education, exercise, and recreation. All inmates may participate in such programs and activities unless security and safety concerns dictate otherwise. Security and weather conditions permitting, inmates are allowed to exercise in the outdoor recreation areas on a regular basis. The use of the outdoor recreation areas are at the discretion of the shift supervisor, and the number of persons using the outdoor recreation area

may be limited at any one time.  (See Torbert Aff.; and Exhibit 10, Lee County Sheriff's Office Policy and Procedure Manual, Section 14 – Inmate Rights, Title 14.07 "Exercise.")

It is the policy of the Lee County Sheriff's Office that inmates in the Lee County Detention Center be provided with programs which meet their individual physical, social, and emotional needs in order to ensure that, when a person is returned to the community, he or she poses no greater threat to the public than when he or she was committed to the Detention Center. (See Torbert Aff.; and Exhibit 11, Lee County Sheriff's Office Policy and Procedure Manual, Section 15 – Inmate Programs and Services, Title 15.01 "Program Goals.")

It is the policy of the Lee County Sheriff's Office that the Lee County Detention Center be maintained in a secure manner in order to ensure protection for the public, and the safe housing of all the inmates.  It is also the policy of the Sheriff's Office that security within the Detention Center be maintained through regular inspections of all areas of the facility in order to properly supervise the staff and inmates and ensure that the physical facility is operating properly.  Shift supervisors are charged with the responsibility of inspecting every area of the Detention Center at least once during each shift.  Inspection reports are completed by the Detention Center Captain at least two times each week after an inspection of the entire facility. In addition, members of the Detention Center staff are charged with the responsibility of conducting an inspection of the entire facility, and observing persons incarcerated in the Detention Center at least once each hour.  (See Torbert Aff.; Exhibit 12, Lee County Sheriff's Office Policy and Procedure Manual, Section 7 – Security, Title 7.01 "Security"; Exhibit 13, Lee County Sheriff's Office Policy and Procedure Manual, Section 7 – Security, Title 7.10 "Facility Inspections.")

It is the policy of the Lee County Sheriff's Office that commissary services be provided to persons incarcerated in the Lee County Detention Center in order that they may buy personal and food items not provided by the Sheriff's Office. A canteen manager is charged with the responsibility of maintaining accurate bookkeeping and accounting for all commissary transactions. Monthly and yearly financial statements regarding the operation of the commissary system are prepared and submitted to the Sheriff and Chief Deputy for review. (See Torbert Aff.; and Exhibit 14, Lee County Sheriff's Office Policy and Procedure Manual, Section 15 – Inmate Programs and Services, Title 15.03 "Commissary.")

It is the policy of the Lee County Sheriff's Office that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the Sheriff, Chief Deputy Sheriff, or any Detention Center personnel. All such requests must be made in writing on an Inmate Request Form. Members of the jail staff are charged with the responsibility of distributing Inmate Request Forms to inmates who wish to utilize them. Requests of an emergency nature are handled immediately, without the necessity of a written request. All requests are forwarded to the Chief Deputy Sheriff, who will, if necessary, send the request to any other responsible or proper authority. If possible, members of the Detention Center staff receiving a grievance from an inmate should answer that grievance. If he or she is not able to do so, the grievance should be forwarded to the Chief Deputy Sheriff for additional action. Detention Center staff receiving a grievance from an inmate must review the grievance, write a response, sign and date the response, place a copy of the response in the inmate's jail file, and return a completed copy to the inmate. Any inmate who is dissatisfied with the response he receives may appeal, in writing, to the next higher level in the chain of command of the Sheriff's Office. No negative sanction may be taken against any inmate for filing a grievance. (See

Torbert Aff.; and Exhibit 15, Lee County Sheriff's Office Policy and Procedure Manual, Section 14 – Inmate Rights, Title 14.04 "Inmate Requests and Grievances.")

It is the policy of the Lee County Sheriff's Office that inmates incarcerated in the Lee County Detention Center be provided with a nutritionally adequate diet.  In order to ensure that this takes place, menus have been submitted to and approved by a registered dietician at Auburn University.  Any menus which are modified are changed in such a manner so that foods substituted are equal in nutritional values to those originally planned for.  (See Torbert Aff.; and Exhibit 16, Lee County Detention Center Policy & Procedure Manual, Section 12, "Food Services.")

Inmates in the Lee County Detention Center are served three meals each day at regularly scheduled times.  At least two of those meals are hot.  Unless unusual circumstances warrant, all meals served to inmates are prepared in the kitchen at the Lee County Detention Center under supervision of the jail staff.  Inmates on work release, or work details, may receive food either at the Detention Center, by a sack lunch, or from an outside source during the time they are away from the Detention Center.  (See Torbert Aff.; and Ex. 16.)

It is the policy of the Lee County Sheriff's Office that adequate health protection be provided at the Detention Center for both staff and inmates by requiring that persons working in food service areas to meet established health and sanitation standards.  Generally, persons who are working in food services must pass a tuberculosis test before beginning work.  The general health of all inmate workers is monitored by a corrections officer assigned to supervise the food service area in order to ensure that inmate workers are free from illness which may be transmittable by food.  All persons working in the food service area are also monitored for cleanliness and instructed to wash their hands upon beginning work or returning from toilet

facilities.  All persons working in the food services area are required to wear hairnets, shower at least once each day or, if necessary, more often, and to have clean laundry daily.  Temperatures of the refrigerators, freezers, and dishwater are checked daily, and all areas of the kitchen are cleaned on an ongoing basis.  The kitchen is regularly inspected by a senior member of the jail staff in order to ensure that all safety and sanitation standards are being met.  In addition, members of the jail staff are required to cooperate with the Alabama Department of Public Health, the Alabama Department of Corrections, the State of Alabama Fire Marshal's Office, or any other agency inspecting the Detention Center and/or the Detention Center's kitchen.  Any problems noted during the inspection of the Detention Center or its kitchen by any outside agencies are, if possible, immediately remedied.  (See Torbert Aff.; and Ex. 16.)

The officers assigned to supervise the kitchen facilities at the Lee County Detention Center inspect food service areas and equipment after each meal to be sure that they are clean and sanitary.  All utensils, trays, cups, and other items used in the preparation and service of meals are washed and sterilized after each use.  Kitchen floors are swept and mopped after each meal.  Refrigerators and freezers are cleaned and kept frost-free.  Countertops and work areas are cleaned after each use.  A general cleaning of the entire food service area takes place at least once each week, and other areas, such as piping, fans, and lights are cleaned as needed.  (See Torbert Aff.; and Ex. 16.)

All meals at the Lee County Detention Center are prepared in a clean and sanitary manner.  Only government inspected meats and poultry are served, and no home canned or preserved foods are served.  Raw foods are washed and cleaned thoroughly before being served. (See Torbert Aff.; and Ex. 16.)

A member of the Detention Center staff observes the service of all food to inmates in order to ensure that proper portions of food are on each tray.  (See Torbert Aff.; and Ex. 16.)

**B.    FACTS**

The Defendants in this matter respond to the Plaintiff's specific allegations (in the order in which they were presented) as follows:

**1.    Fire Hazard**

The Plaintiff specifically claims that a cable was closed with a padlock around the bars of a fire exit door during his incarceration and that a key was not given to officers in order that they might unlock it in the event of an emergency.  (Plaintiff's Complaint.)

The Lee County Detention Center is divided into various housing areas.  During the Plaintiff's latest incarceration he was housed in the "E wing" section of the Detention Center, an area reserved for convicted state inmates, disciplinary lock down, the housing of capital murder suspects, or the housing of persons subject to administrative segregation.  The Plaintiff was a convicted state inmate.  (See Affidavit of Captain Corey Welch, "Welch Aff.")

At one point during Mr. Sanford's incarceration in E wing, the locking mechanism on one of the doors leading into the housing area was found to be faulty.  That door was chained and locked for a period of less than 24 hours until maintenance personnel could repair the door's locking mechanism.  Officers were supplied with keys which would open the padlock holding the door shut.  In addition, during this time, no fire or other emergency occurred within the Detention Center.  (See Welch Aff.)

The Lee County Detention Center is regularly inspected by the Fire Marshal.  Any deficiencies found during such inspections are properly addressed and corrected.  (See Welch Aff.)

Neither the Plaintiff, nor any other inmate incarcerated in the Lee County Detention Center was injured by the emergency measure of locking one of the E wing doors with a cable and padlock on a temporary basis. The Plaintiff never complained to any of the Defendants about this alleged situation during his incarceration and never stated that he suffered any injury or harm due to the lock's presence. (See Welch Aff.)

## 2.    Discrimination

The Plaintiff's complaint that he was discriminated against with regard to programs, religious activity, and exercise is incorrect. Persons who are housed in the E wing of the Detention Center are, as the Plaintiff points out, not allowed to participate in organized church services due to their housing status. Persons are housed in E wing specifically to remove them from the regular jail population. Allowing E wing inmates to attend religious services with general population inmates would invalidate the reason for their segregation. (See Welch Aff.)

Persons incarcerated in the E wing area of the Lee County Detention Center are allowed Bible study within their housing area on Wednesdays. They may also have scheduled clergy visits at any time. (See Welch Aff.)

Defendants deny the Plaintiff's allegations that he was denied access to programs and recreation. Inmates, even those who are incarcerated in E wing, are entitled to receive all jail programs regardless of their status, unless their behavior dictates otherwise. Though Inmate Sanford did engage in several fights during the time he was in the Detention Center, Defendants are unaware of how he was, in any way, denied access to jail programs or services. In addition, inmates in the E wing area of the jail are entitled to the same "yard privileges" as all other inmates. An enclosed recreation yard giving access to sun and open air is utilized by all inmates wishing to do so on a regular basis. Defendants are unaware of the Plaintiff ever being denied the right to use the exercise yard. (See Welch Aff.)

The Plaintiff never made a complaint or filed any grievance during his most recent incarceration concerning his inability to access jail services, programs, religious services, or exercise. The Plaintiff did, on several occasions during his incarceration in E wing submit requests to go to the law library. These requests were answered by members of the jail staff, and the Plaintiff was taken to the library on several occasions, despite his incarceration in the Detention Center's most high security area. (See Welch Aff.; and Exhibit 17, Inmate Request Slips of various dates.)

### 3.     Intercom System

The Plaintiff complains that the intercom system in his cell stopped working in December 2007. He complains that this situation left persons in his cell area with no communication with or ability to notify members of the jail staff in case of an emergency. In addition, he states that officers do not make regular cell checks. (Plaintiff's Complaint.)

The Lee County Detention Center provides inmates with an intercom system in each cell or cell block. These systems are maintained and kept in working order. Inspections of the jail facility test these intercom systems, and any problems found to be present are corrected as soon as possible. Defendants deny that any intercom system within the facility has been out of order, or not working properly since December 2007. Defendants do not recall knowing of or being notified of any type of problem existing with the Plaintiff's intercom system. If such a problem had been brought to their attention, it would have been repaired promptly. (See Welch Aff.)

Members of the Detention Facility staff are required to conduct facility inspections as set out in the Lee County Policies and Procedures as referenced above. In addition, members of the Detention Center staff make regular checks of all areas of the Detention Center at least every thirty (30) minutes. Defendants know of no time when this was not accomplished. (See Welch Aff.)

Defendants are unaware of any problem occurring due to either the intercom system in the Plaintiff's cell not working, or regular checks not being made in the Plaintiff's cell. No emergency presented itself which went unnoticed by the Defendants, and the Plaintiff was not, at any time, caused to suffer any harm or injury as a result of an inoperative intercom or any alleged failure to conduct regular cell checks. (See Welch Aff.)

### 4.    Food

Food served to inmate Jeffery B. Sanford, and other persons incarcerated in the Lee County Detention Center, is wholesome, nutritious, and clean. Regularly, members of the Detention Center staff eat the same food as that served to the inmates. No persons known to the Defendants have had any ill effects from consumption of the Detention Center's food. There have been no verified circumstances of foreign matter found in food which are attributable to members of the kitchen staff, or to contaminated supplies. (See Affidavit of Lieutenant Ray Roberson, "Roberson Aff.")

The Alabama Department of Public Health regularly inspects the Lee County Detention Center and its kitchen. The last such inspection took place on June 28, 2007. During that inspection, out of a possible score of 100, the Detention Center's kitchen received a grade of 97. Only two minor items were found to be deficient, and these were corrected immediately after the inspector pointed them out to the Detention Center's staff. No deficiencies of a critical nature were found. (See Roberson Aff.; and Exhibit 18, Alabama Department of Public Health Food Establishment/Retail Food Store Inspection Report.)

The Lee County Detention Center is regularly inspected by the State of Alabama Department of Corrections. The most recent inspection by the Department of Corrections took place on June 15, 2007. During that inspection, no major deficiencies were found in the

operation of the facility.  (See Roberson Aff.; and Exhibit 19, State of Alabama Department of Corrections Jail Inspection Report.)

Persons preparing and serving food at the Lee County Detention Center are required to be clean, illness-free, and to conduct themselves appropriately during the preparation and service of food.  Inmate trusties working in the food service areas must wear hairnets, wash their hands frequently, and are constantly under the supervision of a member of the jail staff to ensure that their practices are clean and acceptable.  (See Roberson Aff.)

During his incarceration in the Lee County Detention Center the Plaintiff made only one complaint, or grievance of any kind, regarding the food service.  This grievance was submitted on November 1, 2007, wherein Mr. Sanford complained that bread that he was served was old, and/or moldy.  He was answered the following day by a member of the jail staff.  (See Torbert Aff.; and Exhibit 20, Lee County Detention Center Request Slip dated November 1, 2007.)

The Defendants deny that they have, in any way, served unhealthy or unwholesome food to Jeffery B. Sanford, or any other person incarcerated in the Lee County Detention Center, and state affirmatively that the food served to inmates at the Detention Center is wholesome, nutritious, and in adequate portions to constitute a healthy diet.  (See Roberson Aff.)

### 5.    Commissary

The commissary system at the Lee County Detention Center is operated by Keefe Commissary Group of Jacksonville, Florida, which contracts with the Lee County Sheriff's Office to provide commissary service to inmates at the Lee County Detention Center.  Members of the Sheriff's Office staff neither collect nor spend money associated with the operation of the commissary system.  All money which is deposited in inmate accounts is received through an automatic teller-type machine located in the lobby of the Lee County Detention Center.  The Keefe Group charges $3.00 per deposit transaction in order to pay for the maintenance and

operation of the automatic deposit machine. Neither the Lee County Sheriff's Office, nor any of its individual officers, receives any financial benefit from this deposit system. (See Welch Aff.)

Keefe Commissary Group operates as a private, for profit business. In exchange for allowing Keefe to provide services to persons in the Lee County Detention Center, its profits from the commissary items are divided on an equal basis with the Lee County Sheriff's Office. The amounts paid by Keefe to the Lee County Sheriff's Office are used directly for jail programs, the operation of the jail facility, uniforms, training of jail officers, operation of jail vehicles (for transportation of inmates to court, other facilities, medical appointments, etc.), indigent supplies, and inmate clothing. No person profits personally from the contract with Keefe, and all funds received from Keefe as a result of commissary sales are used directly for the benefit of persons incarcerated in the Detention Center. (See Welch Aff.)

To the best of Defendants' knowledge, Jeffery B. Sanford made no complaint during his most recent incarceration that any type of fire hazard existed in the jail; or that he was discriminated against regarding jail programs, religious services, or outdoor exercise; or that there were problems with the outdoor exercise area; or that his intercom did not work properly; or that officers did not make regular cell checks; or that meals were too small, not at the right temperature, were half-done, or lacked nutritional value (except as noted in Exhibit 20, as set out above); or that the commissary system "fleeces" inmates by taking a percentage of their money. If complaints or grievances regarding any of these areas had been received by a member of the Detention Center staff, they would have been properly addressed and/or responded to as required by departmental policy. The Plaintiff never made any type of complaint or statement of damages, whether written, verbal, or otherwise, regarding any of these areas to the Defendants, or otherwise gave Defendants the opportunity to address his concerns before the filing of his

Complaint in March, 2008.  (See Affidavit of Jay Jones, "J. Jones Aff."; Affidavit of Rodney

Tabb, "Tabb Aff."; Torbert Aff.; Welch Aff.; Roberson Aff.; T. Jones Aff.)

Defendants deny that they acted, or caused anyone to act, in such a manner so as to

deprive the Plaintiff of any right to which he was entitled. (See J. Jones Aff.; Torbert Aff.; Welch

Aff.; Roberson Aff.; T. Jones Aff.; Tabb Aff.)

IV.    LAW

A.    All claims by the Plaintiff against the Defendants in their official capacities
must fail based on Eleventh Amendment immunity and because they are not
"persons" under 42 U.S.C. § 1983.

The Plaintiff's claims against Defendants in their official capacities are due to be

dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh

Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th

Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment

immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in

his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence,

Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity

is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419,

1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed

by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a

person, acting under color of law, from depriving another of his rights secured by the United

States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has

held that state officials, in their official capacities, are not "persons" under § 1983.  Will v.

Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against the Defendants in

their official capacities should therefore be dismissed because they are not "persons" under §

1983, and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3 (11th Cir. 1990).

**B.    The Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

The Defendants were acting within their discretionary authority as Sheriff and Detention Center officials of Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme

Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."

Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations

omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must

still show that clearly established law provided the Defendants with fair warning that their conduct

was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding

that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or

federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the

total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003)

(citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity"

case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to

show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the

unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government

agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent

officer or one who was knowingly violating the law would have done such a thing, the government

actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

## 1.    The Plaintiff's conditions of confinement claims.

In order to establish a conditions of confinement claim the Plaintiff "must prove three

elements:   (1) a condition of confinement that inflicted unnecessary pain or suffering

[constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to

that condition, and (3) causation.  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392,

2399, 69 L. Ed. 2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct.

2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90

(11th Cir. 1982) (third element).  Whether a particular condition of confinement constitutes cruel

and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. Wilson v. Seiter, 502 U.S. at 290. In the instant case, the Plaintiff cannot establish either the objective or subjective components of his conditions of confinement claims.

### a.    Objective Component

With regard to the objective component, the Eleventh Circuit has held that "*extreme deprivations* are required to make out a conditions-of-confinement claim" under the Eighth Amendment.[1] Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original). "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[T]he Constitution does not mandate comfortable prisons." Chandler, 379 F.3d. at 1289. In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual."

### b.    Subjective Component

Even if the Plaintiff's conditions of confinement were objectively "cruel and unusual," there must still be evidence of subjective deliberant indifference on the part of each Defendant. "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993). "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645,

---

[1] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving pretrial detainees.'" Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citations omitted).

653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at 837-839. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536. Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim. Porter v. Nussle, 534 U.S. 516, 528 (U.S. 2002).

The Plaintiff cannot show that the Defendants have been deliberately indifferent with regard to the conditions of confinement at the Lee County Detention Facility. The Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any actions of the Defendants constituted cruel and unusual punishment. In this case, none of the conditions of which the Plaintiff complains constituted an excessive risk to his health or safety. The Plaintiff has not shown or even alleged how he has been injured as a result of any of the alleged conditions. Furthermore, the Plaintiff has not presented sufficient evidence to show that any impairment to his physical, emotional, or mental condition actually resulted from the aforementioned environment. In the instant case, even if there were an excessive risk to his health or safety, the Plaintiff has not sufficiently alleged that any of the Defendants knew of or

disregarded that risk.  There are no grievances in the Plaintiff's file regarding his allegations of the conditions of his confinement.  The Plaintiff has failed to sufficiently allege how each Defendant was deliberately indifferent to any alleged conditions.  The Plaintiff has failed to allege that he suffered any injury as a result of the conditions of his confinement.

Based on the foregoing, it is clear that the Defendants did not violate the Plaintiff's constitutional rights.  Further, the Plaintiff cannot show that clearly established law provided the Defendants with fair warning that their conduct was unlawful.  Therefore, the Defendants are entitled to qualified immunity.  Because the Plaintiff cannot meet the objective or subjective tests as set forth in Farmer, *supra*, his conditions of confinement claims are due to be dismissed.

### 2. Diet

The Constitution clearly requires that prisoners be provided "reasonably adequate food." See Hamm v. DeKalb County, 777 F.2d 1567 (11th Cir. 1985).  A "well balanced meal containing sufficient nutritional value to preserve health is all that is required."  See Jones v. Diamond, 636 F.2d 1364, 1378 (5th Cir. 1981) (en banc), cert. dismissed, 453 U.S. 950 (1981); Newman v. Alabama, 559 F.2d 283, 286 (5th Cir. 1977), reversed in part on other grounds, 438 U.S. 781 (1978); Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977).

Other than the Plaintiff's own opinion, he has offered no evidence or proof that the meals served to inmates at the Lee County Detention Center constitute an inadequate diet, or are unsafe or unwholesome in any way.

### C. The Plaintiff's case is due to be dismissed because he has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The Prison Litigation Reform act requires exhaustion of administrative remedies before a prisoner can seek relief in a federal court in a § 1983 action.  Forty-two U.S.C. § 1997e(a) directs that "[n]o action shall be brought with respect to prison conditions under § 1983 of this Title, or

any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As the Eleventh Circuit has noted in Brown v. Sikes, the result of 42 U.S.C. § 1997e(a) is that "when a state provides a grievance procedure for its prisoners . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Brown v. Sikes, 212 F.3d 1205 (11th Cir. 2000); see also Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998).

Exhaustion of available administrative remedies is a required precondition to litigation which may not be waived. Alexander, 159 F.3d at 1335. Thus, the Plaintiff should be required to exhaust all administrative remedies available to him prior to beginning this litigation.

It is undisputable that the Lee County Sheriff's Office provides administrative remedies to persons confined in the Lee County Detention Center by way of a grievance procedure. Similarly, it is undisputed that the Plaintiff in this action has failed to exhaust the remedies available to him within the Lee County Sheriff's Office. This litigation should, therefore, be dismissed for such failure.

The Plaintiff also has available to him an administrative remedy through the Alabama State Board of Adjustment. The Board of Adjustment is a quasi-judicial, legislatively created body designed to have jurisdiction over claims against the State which are not justiciable in the State's courts due to the State's constitutional immunity. Lee v. Cunningham, 176 So. 477, 479 (Ala. 1937); see also Vaughn v. Sibley, 709 So. 2d 482, 486 (Ala. Civ. App. 1987). The Board of Adjustment is empowered to hear and consider all claims for damages to persons as a result of any injury done to them by the State or any of its agencies, institutions, or departments. Code of Alabama § 42-9-62(a) (1975).

Alabama sheriffs, and by judicially acknowledged extension, members of their detention center staff, act as state officers when supervising inmates and otherwise operating county jails. Turquitt v. Jefferson County, Ala., 137 F.3d 1285 (1998). Thus, claims for monetary damages against the Defendants in this matter are, in essence, a claim against the State of Alabama. Since the Plaintiff's claims are actually against the State of Alabama, the Plaintiff has an administrative remedy before the Board of Adjustment that he has not exhausted.

> An inmate incarcerated in . . . prison . . . must first comply with the grievance procedures established by the state . . . before filing a federal lawsuit under § 1983. In deciding if [the plaintiff] exhausted his administrative remedies, we do not review the effectiveness of those remedies, but rather whether remedies were available and exhausted."

Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). As the Plaintiff not only has remedies available to him through the grievance procedure established by the Lee County Sheriff's Office, but also through the Alabama State Board of Adjustment, neither of which he has exhausted, the Plaintiff has failed to exhaust his administrative remedies with respect to his claim for damages as required by 42 U.S.C. § 1997e(a), and this lawsuit is, therefore, due to be dismissed.

## V.    SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the non-movant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A.

Miller, Federal Practice and Procedure § 2529, p. 299.[2]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Mass. Sch. of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## VI.    ANSWER

The Defendants in this action deny each and every allegation made by the Plaintiff against them.  In addition, the Defendants assert the affirmative defenses of qualified immunity regarding the Plaintiff's federal law claims against them, and, insofar as the Plaintiff's Complaint may be construed to make claims against them pursuant to Alabama law, they assert the defense of sovereign immunity to such claims.

## VII.    MOTION FOR SUMMARY JUDGMENT

The Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

## VIII.    CONCLUSION

The Defendants in this cause, Jay Jones, Cary Torbert, Corey Welch, Timothy Jones, Rodney Tabb, and Ray Roberson, deny that they have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Jeffery B. Sanford, of any right to which he is entitled.  (See J. Jones Aff.; Torbert Aff.; Welch Aff.; Roberson aff; Tabb Aff.; T. Jones Aff.)

---

[2] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Respectfully submitted this the 14th day of May, 2008.

**s/Daryl L. Masters**
DARYL L. MASTERS, Bar No. MAS018
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  dmasters@webbeley.com


## CERTIFICATE OF SERVICE

I hereby certify that on this the 14th day of May, 2008, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and that I have mailed a true and correct copy by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Jeffery B. Sanford
Lee County Detention Center
Post Office Box 2407
Opelika, Alabama  36801

**s/Daryl L. Masters**
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JEFFERY B. SANFORD,                    )
                                       )
        Plaintiff,                     )
                                       )
V.                                     )    CIVIL ACTION NO. 3:08-cv-161-WHA
                                       )
SHERIFF JAY JONES, et al.,             )
                                       )
        Defendants.                    )


AFFIDAVIT OF CARY TORBERT, JR.

STATE OF ALABAMA          )
                          )
COUNTY OF LEE             )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and

State at large, personally appeared Cary Torbert, Jr., who being known to me and being by me

first duly sworn on oath deposes and says as follows:

1.      My name is Cary Torbert, Jr.  I am over the age of nineteen and competent to

execute this affidavit.

2.      I serve as Chief Deputy for Lee County, Alabama with the rank of Major.  I was

so employed during the Plaintiff's incarceration from September 2007 to March 2008.

3.      The Lee County Sheriff's Office operates the Lee County, Alabama Detention

Center according to a written set of policies and procedures which governs the conduct of the

persons employed at the Detention Center.

4.      All members of the Detention Center staff, including the Defendants in this

matter, are charged with the responsibility of being familiar with the policies and procedures

governing the operation of the Detention Center, and following those procedures and policies as they carry out their duties.

5.    All members of the Lee County Sheriff's Office are required to receive classroom training at a certified corrections academy.  In addition to formal training, all members of the Detention Center's staff receive on-the-job training.  These methods of training include all aspects of the Detention Center's operation, as well emphasis upon the policies and procedures set in place by the Lee County Sheriff for the operation of the Detention Center.

6.    It is the policy of the Lee County Sheriff's Office that members of the Lee County Detention Center staff be prepared for emergency situations which may be encountered within the Detention Center and that they be prepared to take steps to safeguard the lives of all persons within the facility, including inmates, at such times.

7.    It is the policy of the Lee County Sheriff's Office that all persons employed at the Lee County Detention Center be familiar with the Detention Center's door operations in order to ensure that persons within the Detention Center may be safely evacuated in the event of an emergency.  All members of the Detention Center staff are trained in the use of the manual door release system, and in the use of keys to operate doors within the facility.

8.    It is the policy of the Lee County Sheriff's Office that all persons employed at the Lee County Detention Center be familiar with the Detention Center's door operations in order to ensure that persons within the Detention Center may be safely evacuated in the event of an emergency.  All members of the Detention Center staff are trained in the use of the manual door release system, and in the use of keys to operate doors within the facility.

2

9.    It is the policy of the Lee County Sheriff's Office that the safety of employees, inmates, and visitors at the Lee County Detention Center be maximized through compliance with local and national fire safety requirements.    In order to accomplish this goal, the Detention Center staff maintains an adequate fire protection service, regularly inspects the facility for safety hazards, regularly tests equipment, and places fire extinguishers at appropriate locations throughout the facility.    An automatic fire and smoke detection system is present within the facility and kept in working order.    Furnishings within the Detention Center are made of materials which either do not burn, or burn only with difficulty.    All internal finishing materials are applied in accordance with recognized fire safety codes.    All exits within the Detention Center are distinctly and permanently marked, and all travel distances to exits are in compliance with fire safety codes.    Necessary equipment to maintain lights, power, and communications during an emergency is present at the Detention Center.

10.    It is the policy of the Lee County Sheriff's Office that fire and safety inspections be conducted weekly at the Detention Center.    Any problems found during such inspections are brought to the attention of the Chief Deputy or another appropriate officer and the problems are, if possible, immediately corrected.    One member of the Detention Center staff is appointed to act as a Fire Prevention Officer or, in effect, an "in-house Fire Marshal" for the Detention Center.    This person is charged with being responsible for knowing all fire codes applicable to the Detention Center and arranging for the training of the staff in fire prevention and control measures.

11.    In addition to the above, the Chief Deputy is required to conduct an inspection of the entire facility for fire and safety procedures at least once each quarter.    During this inspection testing is made of the fire alarm system, the smoke detection system, emergency

3

equipment and lighting, all exits, evacuation plans, and general fire code compliance. All members of the Detention Center staff are trained to be on alert for possible fire hazards in the facility, and to immediately report such hazards to a superior officer. It is the responsibility of that officer, once a report has been made, to correct such situation immediately, or if it cannot be corrected, to report it to the Fire Prevention Officer or Chief Deputy for other action. Fire drills are required to take place at least twice yearly at the discretion of the Chief Deputy.

12.    It is the policy of the Lee County Sheriff's Office that, in the event of a fire in the Lee County Detention Center, the primary objective of the Detention Center shall be the protection of lives of inmates, staff, and visitors.

13.    The Lee County Detention Center is operated according to a code of ethics which requires the Detention Center staff conduct themselves in such a manner so as to ensure that inmates are dealt with in a constitutional, honest, fair, and impartial manner.

14.    It is the policy of the Lee County Sheriff's Office that persons employed at the Lee County Detention Center be aware of, and protect, inmate rights, both civil and legal. Members of the Detention Center staff are required to recognize that an inmate's rights include access to programs and work assignments, and the fair and equal administration of discipline within the facility.

15.    It is the policy of the Lee County Sheriff's Office to allow persons incarcerated in the Lee County Detention Center the opportunity to worship in the recognized religion of their choice, receive religious counseling, and, insofar as possible, attend in-house religious programs. Inmates who are held in administrative segregation may not be allowed to attend in-house programs or meetings, but may receive ministry or religious counseling individually.

In addition, no inmate who, in the opinion of the Sheriff, Chief Deputy, or a shift supervisor, presents a security risk, may attend religious services. Such inmates are allowed free access to religious counseling or conferences on an individual basis. Members of the Detention Center staff are prohibited from discriminating against any inmate based upon his religion.

16.    It is the policy of the Lee County Sheriff's Office that persons incarcerated in the Lee County Detention Center be provided with opportunities for education, exercise, and recreation. All inmates may participate in such programs and activities unless security and safety concerns dictate otherwise. Security and weather conditions permitting, inmates are allowed to exercise in the outdoor recreation areas on a regular basis. The use of the outdoor recreation areas are at the discretion of the shift supervisor, and the number of persons using the outdoor recreation area may be limited at any one time.

17.    It is the policy of the Lee County Sheriff's Office that inmates in the Lee County Detention Center be provided with programs which meet their individual physical, social, and emotional needs in order to ensure that, when a person is returned to the community, he or she poses no greater threat to the public than when he or she was committed to the Detention Center.

18.    It is the policy of the Lee County Sheriff's Office that the Lee County Detention Center be maintained in a secure manner in order to ensure protection for the public, and the safe housing of all the inmates. It is also the policy of the Sheriff's Office that security within the Detention Center be maintained through regular inspections of all areas of the facility in order to properly supervise the staff and inmates and ensure that the physical facility is operating properly. Shift supervisors are charged with the responsibility of inspecting every area of the Detention Center at least once during each shift. Inspection

reports are completed by the Detention Center Captain at least two times each week after an inspection of the entire facility. In addition, members of the Detention Center staff are charged with the responsibility of conducting an inspection of the entire facility, and observing persons incarcerated in the Detention Center at least once each hour.

19.    It is the policy of the Lee County Sheriff's Office that commissary services be provided to persons incarcerated in the Lee County Detention Center in order that they may buy personal and food items not provided by the Sheriff's Office. A canteen manager is charged with the responsibility of maintaining accurate bookkeeping and accounting for all commissary transactions. Monthly and yearly financial statements regarding the operation of the commissary system are prepared and submitted to the Sheriff and Chief Deputy for review.

20.    It is the policy of the Lee County Sheriff's Office that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the Sheriff, Chief Deputy Sheriff, or any Detention Center personnel. All such requests must be made in writing on an Inmate Request Form. Members of the jail staff are charged with the responsibility of distributing Inmate Request Forms to inmates who wish to utilize them. Requests of an emergency nature are handled immediately, without the necessity of a written request. All requests are forwarded to the Chief Deputy Sheriff, who will, if necessary, send the request to any other responsible or proper authority. If possible, members of the Detention Center staff receiving a grievance from an inmate should answer that grievance. If he or she is not able to do so, the grievance should be forwarded to the Chief Deputy Sheriff for additional action. Detention Center staff receiving a grievance from an inmate must review the grievance, write a response, sign and date the response, place a copy

6

of the response in the inmate's jail file, and return a completed copy to the inmate. Any inmate who is dissatisfied with the response he receives may appeal, in writing, to the next higher level in the chain of command of the Sheriff's Office. No negative sanction may be taken against any inmate for filing a grievance.

21.    It is the policy of the Lee County Sheriff's Office that inmates incarcerated in the Lee County Detention Center be provided with a nutritionally adequate diet. In order to ensure that this takes place, menus have been submitted to and approved by a registered dietician at Auburn University. Any menus which are modified are changed in such a manner so that foods substituted are equal in nutritional values to those originally planned for.

22.    Inmates in the Lee County Detention Center are served three meals each day at regularly scheduled times. At least two of those meals are hot. Unless unusual circumstances warrant, all meals served to inmates are prepared in the kitchen at the Lee County Detention Center under supervision of the jail staff. Inmates on work release, or work details, may receive food either at the Detention Center, by a sack lunch, or from an outside source during the time they are away from the Detention Center.

23.    It is the policy of the Lee County Sheriff's Office that adequate health protection be provided at the Detention Center for both staff and inmates by requiring that persons working in food service areas to meet established health and sanitation standards. Generally, persons who are working in food services must pass a tuberculosis test before beginning work. The general health of all inmate workers is monitored by a corrections officer assigned to supervise the food service area in order to ensure that inmate workers are free from illness which may be transmittable by food. All persons working in the food service area are also monitored for cleanliness and instructed to wash their hands upon beginning

work or returning from toilet facilities. All persons working in the food services area are required to wear hairnets, shower at least once each day or, if necessary, more often, and to have clean laundry daily. Temperatures of the refrigerators, freezers, and dishwater are checked daily, and all areas of the kitchen are cleaned on an ongoing basis. The kitchen is regularly inspected by a senior member of the jail staff in order to ensure that all safety and sanitation standards are being met. In addition, members of the jail staff are required to cooperate with the Alabama Department of Public Health, the Alabama Department of Corrections, the State of Alabama Fire Marshal's Office, or any other agency inspecting the Detention Center and/or the Detention Center's kitchen. Any problems noted during the inspection of the Detention Center or its kitchen by any outside agencies are, if possible, immediately remedied.

24.     The officers assigned to supervise the kitchen facilities at the Lee County Detention Center inspect food service areas and equipment after each meal to be sure that they are clean and sanitary. All utensils, trays, cups, and other items used in the preparation and service of meals are washed and sterilized after each use. Kitchen floors are swept and mopped after each meal. Refrigerators and freezers are cleaned and kept frost-free. Countertops and work areas are cleaned after each use. A general cleaning of the entire food service area takes place at least once each week, and other areas, such as piping, fans, and lights are cleaned as needed.

25.     All meals at the Lee County Detention Center are prepared in a clean and sanitary manner. Only government inspected meats and poultry are served, and no home canned or preserved foods are served. Raw foods are washed and cleaned thoroughly before being served.

26.     A member of the Detention Center staff observes the service of all food to inmates in order to ensure that proper portions of food are on each tray.

27.     During his incarceration in the Lee County Detention Center the Plaintiff made only one complaint, or grievance of any kind, regarding the food service. This grievance was submitted on November 1, 2007, wherein Mr. Sanford complained that bread that he was served was old, and/or moldy. He was answered the following day by a member of the jail staff.

28.     To the best of Defendants' knowledge, Jeffery B. Sanford made no complaint during his most recent incarceration that any type of fire hazard existed in the jail; or that he was discriminated against regarding jail programs, religious services, or outdoor exercise; or that there were problems with the outdoor exercise area; or that his intercom did not work properly; or that officers did not make regular cell checks; or that meals were too small, not at the right temperature, were half-done, or lacked nutritional value; or that the commissary system "fleeces" inmates by taking a percentage of their money. If complaints or grievances regarding any of these areas had been received by a member of the Detention Center staff, they would have been properly addressed and/or responded to as required by departmental policy. The Plaintiff never made any type of complaint or statement of damages, whether written, verbal, or otherwise, regarding any of these areas to me, or otherwise gave me the opportunity to address his concerns before the filing of his Complaint in March, 2008.

29.     I deny that I have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Jeffery B. Sanford, of any right to which he is entitled.

30.    I certify and state that the documents provided to the Court which are attached to the Special Report are true and correct copies of inmate records, kept at the Lee County Detention Center in the regular course of business.

31.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

_____
CARY TORBERT, JR.

**SWORN TO** and **SUBSCRIBED** before me this 14 day of May, 2008.

_____
NOTARY PUBLIC
My Commission Expires:_____ MY COMMISSION EXPIRES FEB. 5, 2011

10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

JEFFERY B. SANFORD,                    )
                                )
        **Plaintiff,**                  )
                                )
**V.**                                 )    CIVIL ACTION NO. 3:08-cv-161-WHA
                                )
SHERIFF JAY JONES, et al.,             )
                                )
        **Defendants.**                 )

## AFFIDAVIT OF COREY WELCH

STATE OF ALABAMA          )
                       )
COUNTY OF LEE             )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Corey Welch, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Corey Welch. I am over the age of nineteen and competent to execute this affidavit.

2.     I am employed by the Lee County Sheriff's Office and assigned to serve as a corrections officer at the Lee County Detention Center. I have worked as a correctional officer for over ten years, having obtained the rank of Captain. I am a graduate of both the Police Academy and the Alabama Jail Management School.

3.     The Lee County Detention Center is divided into various housing areas. During the Plaintiff's latest incarceration he was housed in the "E wing" section of the Detention Center, an area reserved for convicted state inmates, disciplinary lock down, the

housing of capital murder suspects, or the housing of persons subject to administrative segregation. The Plaintiff was a convicted state inmate.

4.     At one point during Mr. Sanford's incarceration in E wing, the locking mechanism on one of the doors leading into the housing area was found to be faulty. That door was chained and locked for a period of less than 24 hours until maintenance personnel could repair the door's locking mechanism. Officers were supplied with keys which would open the padlock holding the door shut. In addition, during this time, no fire or other emergency occurred within the Detention Center.

5.     The Lee County Detention Center is regularly inspected by the Fire Marshal. Any deficiencies found during such inspections are properly addressed and corrected.

6.     Neither the Plaintiff, nor any other inmate incarcerated in the Lee County Detention Center was injured by the emergency measure of locking one of the E wing doors with a cable and padlock on a temporary basis. The Plaintiff never complained to me or, to my knowledge, anyone else about this alleged situation during his incarceration and never stated that he suffered any injury or harm due to the lock's presence.

7.     The Plaintiff's complaint that he was discriminated against with regard to programs, religious activity, and exercise is incorrect. Persons who are housed in the E wing of the Detention Center are, as the Plaintiff points out, not allowed to participate in organized church services due to their housing status. Persons are housed in E wing specifically to remove them from the regular jail population. Allowing E wing inmates to attend religious services with general population inmates would invalidate the reason for their segregation.

2

8.    Persons incarcerated in the E wing area of the Lee County Detention Center are allowed Bible study within their housing area on Wednesdays. They may also have scheduled clergy visits at any time.

9.    I deny that the Plaintiff was denied access to programs and recreation. Inmates, even those who are incarcerated in E wing, are entitled to receive all jail programs regardless of their status, unless their behavior dictates otherwise. Though Inmate Sanford did engage in several fights during the time he was in the Detention Center, I am unaware of how he was, in any way, denied access to jail programs or services. In addition, inmates in the E wing area of the jail are entitled to the same "yard privileges" as all other inmates. An enclosed recreation yard giving access to sun and open air is utilized by all inmates wishing to do so on a regular basis. I am unaware of the Plaintiff ever being denied the right to use the exercise yard.

10.    The Plaintiff never made a complaint or filed any grievance during his most recent incarceration concerning his inability to access jail services, programs, religious services, or exercise. The Plaintiff did, on several occasions during his incarceration in E wing submit requests to go to the law library. These requests were answered by members of the jail staff, and the Plaintiff was taken to the library on several occasions, despite his incarceration in the Detention Center's most high security area.

11.    The Lee County Detention Center provides inmates with an intercom system in each cell or cell block. These systems are maintained and kept in working order. Inspections of the jail facility test these intercom systems, and any problems found to be present are corrected as soon as possible. To my knowledge, no intercom system within the facility has been out of order, or not working properly since December 2007. I do not recall knowing of

3

or being notified of any type of problem existing with the Plaintiff's intercom system. If such a problem had been brought to my attention, it would have been repaired promptly.

12.    Members of the Detention Facility staff are required to conduct facility inspections as set out in the Lee County Policies and Procedures as referenced above. In addition, members of the Detention Center staff make regular checks of all areas of the Detention Center at least every thirty (30) minutes. I know of no time when this was not accomplished.

13.    I am unaware of any problem occurring due to either the intercom system in the Plaintiff's cell not working, or regular checks not being made in the Plaintiff's cell. No emergency presented itself, and the Plaintiff was not, at any time, caused to suffer any harm or injury as a result of an inoperative intercom or any alleged failure to conduct regular cell checks.

14.    The commissary system at the Lee County Detention Center is operated by Keefe Commissary Group of Jacksonville, Florida, which contracts with the Lee County Sheriff's Office to provide commissary service to inmates at the Lee County Detention Center. Members of the Sheriff's Office staff neither collect nor spend money associated with the operation of the commissary system. All money which is deposited in inmate accounts is received through an automatic teller-type machine located in the lobby of the Lee County Detention Center. The Keefe Group charges $3.00 per deposit transaction in order to pay for the maintenance and operation of the automatic deposit machine. Neither the Lee County Sheriff's Office, nor any of its individual officers, receives any financial benefit from this deposit system.

15.    Keefe Commissary Group operates as a private, for profit business.    In exchange for allowing Keefe to provide services to persons in the Lee County Detention Center, its profits from the commissary items are divided on an equal basis with the Lee County Sheriff's Office.    The amounts paid by Keefe to the Lee County Sheriff's Office are used directly for jail programs, the operation of the jail facility, uniforms, training of jail officers, operation of jail vehicles (for transportation of inmates to court, other facilities, medical appointments, etc.), indigent supplies, and inmate clothing.    No person profits personally from the contract with Keefe, and all funds received from Keefe as a result of commissary sales are used directly for the benefit of persons incarcerated in the Detention Center.

16.    To the best of Defendants' knowledge, Jeffery B. Sanford made no complaint during his most recent incarceration that any type of fire hazard existed in the jail; or that he was discriminated against regarding jail programs, religious services, or outdoor exercise; or that there were problems with the outdoor exercise area; or that his intercom did not work properly; or that officers did not make regular cell checks; or that meals were too small, not at the right temperature, were half-done, or lacked nutritional value; or that the commissary system "fleeces" inmates by taking a percentage of their money.    If complaints or grievances regarding any of these areas had been received by a member of the Detention Center staff, they would have been properly addressed and/or responded to as required by departmental policy.    The Plaintiff never made any type of complaint or statement of damages, whether written, verbal, or otherwise, regarding any of these areas to me, or otherwise gave me the opportunity to address his concerns before the filing of his Complaint in March, 2008.

5

17.    I deny that I have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Jeffery B. Sanford, of any right to which he is entitled.

18.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.


_____
COREY WELCH

**SWORN TO** and **SUBSCRIBED** before me this 14 day of May, 2008.


_____
NOTARY PUBLIC
My Commission Expires:_____
MY COMMISSION EXPIRES FEB. 5, 2011

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFERY B. SANFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO. 3:08-cv-161-WHA** |
| | ) | |
| **SHERIFF JAY JONES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT OF RODNEY TABB**

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Rodney Tabb, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Rodney Tabb.  I am over the age of nineteen and competent to execute this affidavit.

2.     I serve as a Corrections Officer at the Lee County Detention Center with the rank of Sergeant.  I was so employed during Plaintiff's incarceration.

3.     To the best of Defendants' knowledge, Jeffery B. Sanford made no complaint during his most recent incarceration that any type of fire hazard existed in the jail; or that he was discriminated against regarding jail programs, religious services, or outdoor exercise; or that there were problems with the outdoor exercise area; or that his intercom did not work properly; or that officers did not make regular cell checks; or that meals were too small, not at the right temperature, were half-done, or lacked nutritional

value; or that the commissary system "fleeces" inmates by taking a percentage of their money. If complaints or grievances regarding any of these areas had been received by a member of the Detention Center staff, they would have been properly addressed and/or responded to as required by departmental policy. The Plaintiff never made any type of complaint or statement of damages, whether written, verbal, or otherwise, regarding any of these areas to me, or otherwise gave me the opportunity to address his concerns before the filing of his Complaint in March, 2008.

4.    I deny that I have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Jeffery B. Sanford, of any right to which he is entitled.

5.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

RODNEY TABB

**SWORN TO** and **SUBSCRIBED** before me this 14 day of May, 2008.

NOTARY PUBLIC
My Commission Expires:___MY COMMISSION EXPIRES FEB. 5, 2011

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **JEFFERY B. SANFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO. 3:08-cv-161-WHA** |
| | ) | |
| **SHERIFF JAY JONES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF RAY ROBERSON

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Ray Roberson, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.  My name is Ray Roberson.  I am over the age of nineteen and competent to execute this affidavit.

2.  I am employed with the Lee County Sheriff's Office and serve as Assistant Jail Administrator at the Lee County Detention Center.  I have worked in the Lee County Detention Center for twenty-three years and have obtained the rank of lieutenant.

3.  Food served to inmate Jeffery B. Sanford, and other persons incarcerated in the Lee County Detention Center, is wholesome, nutritious, and clean.  Regularly, members of the Detention Center staff eat the same food as that served to the inmates.  To my knowledge, no one has had any ill effects from consumption of the Detention Center's food.  There have been no verified circumstances of foreign matter found in food which are attributable to members of the kitchen staff, or to contaminated supplies.

4.    The Alabama Department of Public Health regularly inspects the Lee County Detention Center and its kitchen. The last such inspection took place on June 28, 2007. During that inspection, out of a possible score of 100, the Detention Center's kitchen received a grade of 97. Only two minor items were found to be deficient, and these were corrected immediately after the inspector pointed them out to the Detention Center's staff. No deficiencies of a critical nature were found.

5.    The Lee County Detention Center is regularly inspected by the State of Alabama Department of Corrections. The most recent inspection by the Department of Corrections took place on June 15, 2007. During that inspection, no major deficiencies were found in the operation of the facility.

6.    Persons preparing and serving food at the Lee County Detention Center are required to be clean, illness-free, and to conduct themselves appropriately during the preparation and service of food. Inmate trusties working in the food service areas must wear hairnets, wash their hands frequently, and are constantly under the supervision of a member of the jail staff to ensure that their practices are clean and acceptable.

7.    I deny that I have, or any other Defendant has, in any way, served unhealthy or unwholesome food to Jeffery B. Sanford, or any other person incarcerated in the Lee County Detention Center, and state affirmatively that the food served to inmates at the Detention Center is wholesome, nutritious, and in adequate portions to constitute a healthy diet.

8.    To the best of Defendants' knowledge, Jeffery B. Sanford made no complaint during his most recent incarceration that any type of fire hazard existed in the jail; or that he was discriminated against regarding jail programs, religious services, or outdoor exercise; or that there were problems with the outdoor exercise area; or that his intercom did not work properly; or that officers did not make regular cell checks; or that meals were too small, not at

2

the right temperature, were half-done, or lacked nutritional value; or that the commissary system "fleeces" inmates by taking a percentage of their money. If complaints or grievances regarding any of these areas had been received by a member of the Detention Center staff, they would have been properly addressed and/or responded to as required by departmental policy. The Plaintiff never made any type of complaint or statement of damages, whether written, verbal, or otherwise, regarding any of these areas to me, or otherwise gave me the opportunity to address his concerns before the filing of his Complaint in March, 2008.

9.    I deny that I have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Jeffery B. Sanford, of any right to which he is entitled.

10.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

_____
RAY ROBERSON

**SWORN TO** and **SUBSCRIBED** before me this _15_ day of May, 2008.

_____
NOTARY PUBLIC
My Commission Expires:  MY COMMISSION EXPIRES FEB. 5, 2011

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

JEFFERY B. SANFORD,                    )
                                        )
    Plaintiff,                     )
                                        )
V.                                      )     CIVIL ACTION NO. 3:08-cv-161-WHA
                                        )
SHERIFF JAY JONES, et al.,             )
                                        )
    Defendants.                    )

### AFFIDAVIT OF JAY JONES

STATE OF ALABAMA          )
                          )
COUNTY OF LEE             )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Jay Jones, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Jay Jones. I am over the age of nineteen and competent to execute this affidavit.

2.    I am the duly elected Sheriff of Lee County, Alabama, and have served in such capacity since 1999.

3.    I deny that I have acted or caused anyone to act in such as a manner so as to deprive the Plaintiff in this case, Jeffery B. Sanford, of any right to which he is entitled.

4.    To the best of Defendants' knowledge, Jeffery B. Sanford made no complaint during his most recent incarceration that any type of fire hazard existed in the jail; or that he was discriminated against regarding jail programs, religious services, or outdoor exercise; or that there were problems with the outdoor exercise area; or that his intercom did not work

properly; or that officers did not make regular cell checks; or that meals were too small, not at the right temperature, were half-done, or lacked nutritional value; or that the commissary system "fleeces" inmates by taking a percentage of their money.  If complaints or grievances regarding any of these areas had been received by a member of the Detention Center staff, they would have been properly addressed and/or responded to as required by departmental policy.  The Plaintiff never made any type of complaint or statement of damages, whether written, verbal, or otherwise, regarding any of these areas to me, or otherwise gave me the opportunity to address his concerns before the filing of his Complaint in March, 2008.

5.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

_____
JAY JONES

**SWORN TO** and **SUBSCRIBED** before me this 14 day of May, 2008.

_____
NOTARY PUBLIC
My Commission Expires:_____  MY COMMISSION EXPIRES FEB. 5, 2011

2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFERY B. SANFORD, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. 3:08-cv-161-WHA |
| | ) | |
| SHERIFF JAY JONES, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

### AFFIDAVIT OF TIMOTHY JONES

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF LEE | ) |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Timothy Jones, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Timothy Jones. I am over the age of nineteen and competent to execute this affidavit.

2.    At the time of the allegations of the Plaintiff's Complaint, I was serving as a Corrections Officer at the Lee County Detention Center and had served in that capacity since March of 1995. I have achieved the rank of Lieutenant. I am a graduate of the Alabama Jail Management School and the Alabama Police Academy.

3.    I deny that I have acted or caused anyone to act in such as a manner so as to deprive the Plaintiff in this case, Jeffery B. Sanford, of any right to which he is entitled.

4.    To the best of Defendants' knowledge, Jeffery B. Sanford made no complaint during his most recent incarceration that any type of fire hazard existed in the jail; or that he

was discriminated against regarding jail programs, religious services, or outdoor exercise; or that there were problems with the outdoor exercise area; or that his intercom did not work properly; or that officers did not make regular cell checks; or that meals were too small, not at the right temperature, were half-done, or lacked nutritional value; or that the commissary system "fleeces" inmates by taking a percentage of their money.  If complaints or grievances regarding any of these areas had been received by a member of the Detention Center staff, they would have been properly addressed and/or responded to as required by departmental policy.  The Plaintiff never made any type of complaint or statement of damages, whether written, verbal, or otherwise, regarding any of these areas to me, or otherwise gave me the opportunity to address his concerns before the filing of his Complaint in March, 2008.

5.     I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

TIMOTHY JONES

**SWORN TO** and **SUBSCRIBED** before me this  14  day of May, 2008.

NOTARY PUBLIC
My Commission Expires:_____ MY COMMISSION EXPIRES FEB. 5, 2011



2

# EXHIBIT 1

Intake and Release Documents from the Lee County
Sheriff's Office:
    Plaintiff's Booking Sheet,
    Charge Sheet,
    2 Committal to Custody forms,
    2 Alabama Judicial Data Center Conviction Reports,
    an Alabama Uniform Arrest Report,
    an Inmate Information Sheet, and
    an Inmate Release Sheet

```
09/12/2007      11:34:12          LEE COUNTY SHERIFF'S OFFICE
                                  INMATE BOOKING SHEET                    PAGE    1
===============================================================================
BOOKING NO: 070005179
```

INMATE NAME: SANFORD JEFFERY BERNARD
     ALIAS:
     ALIAS:                               RACE: B     SEX: M
   ADDRESS: 212 RODDEN CT #510          HT: 6'01"  HAIR: BLK
CITY/ST/ZIP: OPELIKA, AL 36801         WT: 255  EYES: BRO
HOME PHONE: 000-745-0325          COMPLEX:
     DOB: 12/30/1965  AGE:  41     SSN: 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
PLCE BIRTH: INDIANAPOLLIS         DL ST: AL   DLN: 30126609
     STATE: IN                  SID:
 M. STATUS:                    LOCID: 3823
  RELIGION: CHRISTIAN
GANG ASSOC: NONE
SCARS/TATTOOS: NONE
KNOWN ENEMIES: NONE
  REMARKS: NONE

```
------------------------------ NEXT OF KIN ------------------------------------
```
NEXT OF KIN: JOAN FOREMAN  *Barbara Sanford*
   ADDRESS: SAA               RELATIONSHIP: FRIEND
CITY/ST/ZIP: ,                  PHONE: 000-864-0973
   REMARKS:                           745-0325
```
----------------------------- EMPLOYER INFO -----------------------------------
```
   EMPLOYED: N *Y*
EMPLOYER NAME: SOUTHERN UNION  *Olive Garden*
   ADDRESS:
CITY/ST/ZIP: OPELIKA, AL 36801
     PHONE: 334-745-0325

```
------------------------------- MEDICAL ---------------------------------------
```
HANDICAPPED: Y  NEEDS:
   GLASSES: N  SMOKE: N
CAL NEEDS: N  NEEDS: N
 PHYSICIAN:              PHONE: 000-000-0000
  REMARKS:

  REMARKS: ALLERGEIC TO PENNCILLIN, WASP STINGS, BEE STINGS
  REMARKS:
```
------------------------------- PROPERTY --------------------------------------
```
     CASH:    $02.50
DESCRIPTION:
OD. PROPERTY: WATCH, WALLET,
ADD. PROPERTY:
ADD. PROPERTY:
 BIN NUMBER: 416
VEH IMPOUNDED:
 IMPOUND LOT:
   REMARKS:
   REMARKS:
```
===============================================================================
```
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE:                   DATE:         TIME:

BOOK OFFICER:            DATE: 9-12-0     TIME:

```
                          LEE COUNTY SHERIFF'S OFFICE
09/12/2007     11:34:12        INMATE BOOKING SHEET                  PAGE    2
===============================================================================
BOOKING NO: 070005179     INMATE NAME: SANFORD JEFFERY BERNARD
===============================================================================
         COURT: MUNICIPAL              ATTORNEY ON REC:
         JUDGE:                             PHONE: 000-000-0000
       REMARKS: COURTDATE 11-21-07 AT 1:30PM
       REMARKS:
-------------------------------------------------------------------------------
     BOOK DATE: 09/12/2007  BOOK TIME: 11:17  BOOK TYPE: NORMAL

   ARREST DATE: 09/12/2007           BOOKING OFFICER: PEAVY
   ARREST DEPT: OPD                  CELL ASSIGNMENT:
 ARRST OFFICER: WALTERS                    MEAL CODE: 06  OPELIKA PD
 PROJ. RLSDATE: 00/00/0000                  FACILITY: 01  COUNTY JAIL
  SEARCH OFFCR: PEAVY                  CLASSIFICATION:
   TYPE SEARCH: PAT                    WORK RELEASE: N
 INTOX RESULTS:

         HOLDS: N
        AGENCY:                   REASON:
        AGENCY:                   REASON:
        AGENCY:                   REASON:
        AGENCY:                   REASON:

         NOTES:
         NOTES:
         NOTES:
```

```
                          LEE COUNTY SHERIFF'S OFFICE
09/12/2007      11:34:12       INMATE CHARGE SHEET                   PAGE    3
===============================================================================
BOOKING NO: 070005179        INMATE NAME: SANFORD JEFFERY BERNARD
===============================================================================
    CHARGE NO:   1  DISPOSITION: OPEN                  HOLD: N

ALA STATUTE: 13A-8-5                   # OF COUNTS:    1
     OFFENSE: THEFT OF PROPERTY III    WARRANT #:
      CASE #:
     BOND AMT: 500                              FINE:       $0.00
     BAIL AMT: 500
INIT APPEAR: 00/00/0000
RELEASE DTE: 00/00/0000         SENTENCE DATE: 00/00/0000
ARREST DATE: 09/12/2007          ARST AGENCY: OPD
ARST OFFICR: WALTERS                  COUNTY: LEE
       COURT: MUNICIPAL                 JUDGE:
DEF ATTORNY:                    DIST ATTORNEY:
    COMMENTS:
    COMMENTS: COURTDATE 11-21-07 AT 1:30PM
    COMMENTS:
-------------------------------------------------------------------------------
```

C/S (DR96-492) = NB

STATE OF ALABAMA
UNIFIED JUDICIAL SYSTEM
EE COUNTY FORM CC-30

## COMMITTAL TO CUSTODY

| CASE NUMBER | | |
|---|---|---|
| CC | CC | 37.66 |
| ID | YR | Case No. |

State

_____
PLAINTIFF,

VS.

Jeffery Sanford,
_____
DEFENDANT.

IN THE Circuit COURT OF

LEE COUNTY, ALABAMA

CASE NO. CC CC 37.66

The defendant, Jeffery Sanford _____ is _____

hereby committed to the custody of the Sheriff of Lee County, Alabama for:

TOP II - prob revoked - 15 yrs Bonds/4 cy - clcp _____

5th offend + SAP program _____

Defendant's bond is hereby set at $ _____

DONE this the 15 day of Nov _____, 2007.

_____
JUDGE

STATE OF ALABAMA
UNIFIED JUDICIAL SYSTEM
LEE COUNTY FORM CC-30

## COMMITTAL TO CUSTODY

CASE NUMBER

CC - 06 - 37
ID    YR    Case No.

State

_____,
PLAINTIFF,

VS.

Jeffrey Saford

_____,
DEFENDANT.

*  *  *  *  *  *  *  *

IN THE _Circuit_ COURT OF

LEE COUNTY, ALABAMA

CASE NO. _CC-06-37_

The defendant, _Jeffrey Saford_ is

hereby committed to the custody of the Sheriff of Lee County, Alabama for:

Held for Revocation Hearing Nov 15 2007 at 1:30 pm

Defendant's bond is hereby set at $ _____

DONE this the _23_ day of _Oct_ , _07_.

_____
JUDGE

ACR359                    ALABAMA JUDICIAL DATA CENTER
                                    LEE COUNTY
                              TRANSCRIPT OF RECORD
                              CONVICTION REPORT
                                                    CC 2006 000037.70 01
                                                    HON. JACOB A. WALKER III

```
| CIRCUIT COURT OF LEE COUNTY              COURT ORI: 043015 J            |
|------------------------------------------------------------------------|
| STATE OF ALABAMA       VS.               DC NO: GJ 2005 001246.00       |
| SANFORD JEFFREY            ALIAS:        G J:    38                     |
| 212 RODEN CT APT 510       ALIAS:        SSN:   310809095               |
| OPELIKA  AL  36801                       SID:   000000000               |
|                                          AIS:   143572                  |
|------------------------------------------------------------------------|
| DOB:  12/30/1965  SEX: M  HT: 6 01  WT: 255  HAIR: BLK    EYE: BRO      |
| RACE: ( )W (X)B ( )O   COMPLEXION: _____  AGE: ____  FEATURES: _____    |
|------------------------------------------------------------------------|
| DATE OFFENSE: 11/17/2005  ARREST DATE: 11/18/2005  ARREST ORI: 0430100  |
|------------------------------------------------------------------------|
| CHARGES @ CONV      CITES          CT CL COURT ACTION         CA DATE   |
| PROBATION REV       PROBATION REV  01 U  PROBATION REVOKED  11/15/2007  |
|   TDP II                           00                      00/00/0000   |
|                                    00                      00/00/0000   |
|------------------------------------------------------------------------|
| JUDGE: HON. JACOB A. WALKER III     PROSECUTOR: ABBETT NICK             |
|------------------------------------------------------------------------|
| PROBATION APPLIED    GRANTED  DATE      REARRESTED DATE   REVOKED DATE  |
| ( )Y( )N _____  ( )Y( )N _____    ( )Y( )N _____  (X)Y( )N 11152007|
|------------------------------------------------------------------------|
| 15-18-8, CODE OF ALA 1975   IMPOSED   SUSPENDED    TOTAL   JAIL CREDIT  |
| ( )Y (X)N  CONFINEMENT:  10 00 000  00 00 000  10 00 000   00 00 504    |
|            PROBATION  :  00 00 000              00 00 000               |
| DATE SENTENCED: 06/09/2006    SENTENCE BEGINS: 11/15/2007               |
|------------------------------------------------------------------------|
| PROVISIONS               COSTS/RESTITUTION         DUE      ORDERED     |
| PENITENTIARY             RESTITUTION             $0.00       $0.00      |
|                          ATTORNEY FEE            $0.00       $0.00      |
|                          CRIME VICTIMS           $0.00       $0.00      |
|                          COST                    $0.00       $0.00      |
|                          FINE                    $0.00       $0.00      |
|                          MUNICIPAL FEES          $0.00       $0.00      |
|                          DRUG FEES               $0.00       $0.00      |
|                          ADDTL DEFENDANT         $0.00       $0.00      |
|                          DA FEES                 $0.00       $0.00      |
|                          COLLECTION ACCT         $0.00       $0.00      |
|                          JAIL FEES               $0.00       $0.00      |
|                                                                        |
|                          TOTAL                   $0.00       $0.00      |
|------------------------------------------------------------------------|
| APPEAL DATE        SUSPENDED       AFFIRMED         REARREST            |
| ( )Y( )N _____  ( )Y( )N _____  ( )Y( )N _____  ( )Y( )N _____    |
|------------------------------------------------------------------------|
| REMARKS:                    THIS IS TO CERTIFY THAT THE                 |
|                             ABOVE INFORMATION WAS EXTRACTED             |
|                             FROM OFFICIAL COURT RECORDS                 |
|                             AND IS TRUE AND CORRECT.                    |
|                                                                        |
|                             Corinne T Hurst                            |
|                             CORINNE T. HURST                           |
|                             11/20/2007                                 |
```

OPERATOR: LEM
PREPARED: 11/20/2007

ACR359
```
                    ALABAMA JUDICIAL DATA CENTER
                            LEE COUNTY
                      TRANSCRIPT OF RECORD
                       CONVICTION REPORT
                                        CC 2006 000037.70 01
                                        HON. JACOB A. WALKER III
```

```
-----------------------------------------------------------------------
| CIRCUIT COURT OF LEE COUNTY               COURT ORI: 043015 J        |
|---------------------------------------------------------------------|
| STATE OF ALABAMA        VS.               DC NO: GJ 2005 001246.00   |
| SANFORD JEFFREY           ALIAS:          G J:   38                  |
| 212 RODEN CT APT 510      ALIAS:          SSN:   310809095           |
| OPELIKA  AL  36801                        SID:   000000000           |
|                                           AIS:   143572              |
|---------------------------------------------------------------------|
| DOB: 12/30/1965  SEX: M  HT: 6 01   WT: 255  HAIR: BLK  EYE: BRO     |
| RACE: ( )W (X)B ( )O   COMPLEXION: _____  AGE: ____  FEATURES: ____ |
|---------------------------------------------------------------------|
| DATE OFFENSE: 11/17/2005  ARREST DATE: 11/18/2005  ARREST ORI: 0430100 |
|---------------------------------------------------------------------|
| CHARGES @ CONV    CITES          CT CL COURT ACTION        CA DATE   |
| PROBATION REV    PROBATION REV   01 U  PROBATION REVOKED   11/15/2007|
|                                  00                        00/00/0000|
|        TOP II                    00                        00/00/0000|
|---------------------------------------------------------------------|
| JUDGE: HON. JACOB A. WALKER III   PROSECUTOR: ABBETT NICK            |
|---------------------------------------------------------------------|
| PROBATION APPLIED   GRANTED  DATE     REARRESTED DATE  REVOKED  DATE |
| ( )Y( )N _____   ( )Y( )N _____  ( )Y( )N _____ (X)Y( )N 11152007|
|---------------------------------------------------------------------|
| 15-18-8, CODE OF ALA 1975    IMPOSED    SUSPENDED    TOTAL    JAIL CREDIT|
| ( )Y (X)N  CONFINEMENT: 10 00 000  00 00 000  10 00 000  00 00 504   |
|            PROBATION  : 00 00 000             00 00 000              |
| DATE SENTENCED: 06/09/2006   SENTENCE BEGINS: 11/15/2007             |
|---------------------------------------------------------------------|
| PROVISIONS                COSTS/RESTITUTION       DUE      ORDERED   |
|                                                                     |
|   PENITENTIARY            RESTITUTION           $0.00      $0.00     |
|                          ATTORNEY FEE           $0.00      $0.00     |
|                          CRIME VICTIMS          $0.00      $0.00     |
|                          COST                   $0.00      $0.00     |
|                          FINE                   $0.00      $0.00     |
|                          MUNICIPAL FEES         $0.00      $0.00     |
|                          DRUG FEES              $0.00      $0.00     |
|                          ADDTL DEFENDANT        $0.00      $0.00     |
|                          DA FEES                $0.00      $0.00     |
|                          COLLECTION ACCT        $0.00      $0.00     |
|                          JAIL FEES              $0.00      $0.00     |
|                                                                     |
|                          TOTAL                  $0.00      $0.00     |
|---------------------------------------------------------------------|
| APPEAL DATE       SUSPENDED       AFFIRMED          REARREST         |
|                                                                     |
| ( )Y( )N _____   ( )Y( )N _____  ( )Y( )N _____  ( )Y( )N _____ |
|---------------------------------------------------------------------|
| REMARKS:                        THIS IS TO CERTIFY THAT THE          |
|                                 ABOVE INFORMATION WAS EXTRACTED      |
|                                 FROM OFFICIAL COURT RECORDS          |
|                                 AND IS TRUE AND CORRECT.             |
|                                                                     |
|                                                                     |
|                                                                     |
|                                 CORINNE T. HURST                     |
|                                                                     |
|                                 11/20/2007                          |
-----------------------------------------------------------------------
```

OPERATOR: LEM
PREPARED: 11/20/2007

JWC· 11/29/07

# ALABAMA UNIFORM ARREST REPORT

| DOMESTIC VIOLENCE DUAL ARREST | | Fingerprinted | R84 Completed |
|---|---|---|---|
| ☐ | | ☐ Yes | ☐ Yes |
| | | | ☐ No |

**OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION**

## IDENTIFICATION

**1 ORI #** AL 04 30 200  **2 Agency Name** OPELIKA POLICE DEPT  **3 Case #** 2007-010942  **4 SFX**

**5 Last, First, Middle Name** SANFORD JEFFERY "N.M.N"  **6 Alias AKA**

**7 Sex** ☒ M  **8 Race** ☒ W  **9 Ethnicity** ☐ Hispanic ☒ Other  **10 Hgt** 6'1  **11 Wgt** 240  **12 Eye** BRO  **13 Hair** BLK  **14 Skin** MED  **15** ☐ Scars ☐ Marks ☐ Tattoos ☐ Amputations

**16 Place of Birth (City, County State)** OPELIKA, LEE AL  **17 SSN** 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  **18 Date of Birth** 12-30-65  **19 Age** 41  **20 Miscellaneous ID #**

**21 SID #**  **22 Fingerprint Class** Key / Major / Primary / SCDV / Sub-Secondary / Final  Henry Class  NCIC Class  **23 DL#** I 266709  **24 St** AL

**25 FBI #**  **26 Identification Comments**

**27** ☒ Resident ☐ Non-Resident  **28 Home Address (Street, City, State, Zip)** 212 RODEN CT APT 510, OPELIKA, AL 36801  **29 Residence Phone** (334) 745-0325  **30 Occupation (Be Specific)** LABORER

**31 Employer (Name of Company/School)** HARRIS CONSTRUCTION  **32 Business Address (Street, City, State, Zip)** UNKNOWN  **33 Business Phone ( )**

## ARREST

**34 Location of Arrest (Street, City, State, Zip)** 1515 2ND AVE SUITE A, OPELIKA, AL 36801  **35 Sector #** D1  **36 Arrested for Your Jurisdiction?** ☒ Yes ☐ No  ☐ In State ☐ Out of State Agency

**37 Condition of Arrestee:** ☐ Drunk ☒ Sober ☐ Drinking ☐ Drugs  **38 Resist Arrest?** ☐ Yes ☒ No  **39 Injuries?** ☒ None ☐ Officer ☐ Arrestee  **40 Armed?** ☒ N ☐ Y  **41 Description of Weapon** ☐ Handgun ☐ Rifle ☐ Shotgun ☐ Other Firearm ☐ Other Weapon

**42 Date of Arrest** 09 12 07  **43 Time of Arrest** 10:28 ☐ AM ☐ PM ☒ MIL  **44 Day of Arrest** ☐1 ☐2 ☐3 ☒4 ☐5 ☐6 ☐7  **45 Type of Arrest** ☒ On View ☐ Warrant ☐ Call  **46 Arrested Before?** ☒ Yes ☐ No ☐ Unknown

**47 Charge - 1** ☒ Fel ☐ Misd  THEFT OF PROPERTY II  **48 UCR Code**  **49 Charge - 2** ☐ Fel ☐ Misd  **50 UCR Code**

**51 State Code/Local Ordinance** 13A-8-5 / 14-188  **52 Warrant #**  **53 Date Issued** M D Y  **54 State Code/Local Ordinance**  **55 Warrant #**  **56 Date Issued** M D Y

**57 Charge - 3** ☐ Fel ☐ Misd  **58 UCR Code**  **59 Charge - 4** ☐ Fel ☐ Misd  **60 UCR Code**

**61 State Code/Local Ordinance**  **62 Warrant #**  **63 Date Issued** M D Y  **64 State Code/Local Ordinance**  **65 Warrant #**  **66 Date Issued** M D Y

**67 Arrest Disposition** ☐ Held ☐ Bail ☐ Released  **68 If Out On Release What Type?** ☐ Tot - U.L. ☐ Other  **69 Arrested with (1) Accomplice (Full Name)**

**70 Arrested with (2) Accomplice (Full Name)**

## VEHICLE

**71 VYR**  **72 VMA**  **73 VMO**  **74 VST**  **75 VCO** Top / Bottom  **76 Tag #**  **77 LIS**  **78 LIY**

**79 VIN**  **80 Impounded?** ☐ Yes ☐ No  **81 Storage Location/Impound #**

**82 Other Evidence Seized/Property Seized**  ☐ Continued in Narrative

## JUVENILE

**83 Juvenile Disposition:** ☐ Handled and Released ☐ Ref. to Juvenile Court ☐ Ref. to Welfare Agency ☐ Ref. to Other Police Agency ☐ Ref. to Adult Court  **84 Released To**

**85 Parent or Guardian (Last, First, Middle Name)**  **86 Address (Street, City, State, Zip)**  **87 Phone ( )**

**88 Parents Employer**  **89 Occupation**  **90 Address (Street, City, State, Zip)**  **91 Phone ( )**

## RELEASE

**92 Date and Time of Release** M D Y ☐ AM ☐ MIL  **93 Releasing Officer Name**  **94 Agency/Division**  **95 ID #**

**96 Released To**  **97 Agency/Division**  **98 Agency Address**

**99 Personal Property Released to Arrestee** ☐ Yes ☐ No ☐ Partial  **100 Property Not Released/Held At:**  **101 Property #**

**102 Remarks (Note Any Injuries at Time of Release)**

**103 Signature of Receiving Officer**  **104 Signature of Releasing Officer**  Local Use  State Use

**MULTIPLE CASES CLOSED** **105 Case #**  **106 SFX**  **107 Case #**  **108 SFX**  **109 Case #**  **110 SFX**  **111 MULTIPLE CASES CLOSED NARRATIVE** ☐ Y ☐ N

**112 Arresting Officer (Last, First, M.)** WALTERS, D  **113 ID #** 009  **114 Arresting Officer (Last, First, M.)**  **115 ID #**  **116 Supervisor**  ID #  **117 Watch Cmdr.**  ID #

# Inmate Information Sheet

**Booking Number:**    070005179

| | |
|---|---|
| Name: | JEFFERY BERNARD SANFORD |
| Address: | 212 RODDEN CT #510 |
| City: | OPELIKA |
| State: | Alabama          Zip:    368010000 |

## Physical Description

| | | | |
|---|---|---|---|
| Race: | Black | Hair: | Black |
| Gender: | Male | Eyes: | Brown |
| Height: | 601 | Complexion: | Unknown |
| Weight: | 255 | DOB: | DOB          Age:    41 |
| Scars/Tattoos: | NONE | | |

## Personal Information

| | | | |
|---|---|---|---|
| DL State: | Alabama | Home Phone: | 7450325 |
| DL Number: | 30126609 | Work Phone: | 3347450325 |
| SSN: | 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 | | |
| SID Number: | | | |

## Booking Information

| | | | |
|---|---|---|---|
| Arrest Date: | 09/12/2007 | Booking Officer: | PEAVY |
| Arrest Dept: | OPD | Booking Date: | 09/12/2007 |
| Arrest Offcr: | WALTERS | Booking Time: | 11:17 AM |
| Search Offcr: | PEAVY | Facility: | 01 |
| Meal Code: | 06 | Cell Assignment: | |

## Charge Information

| Offense | Fine | Bond | Disposition |
|---|---|---|---|
| THEFT OF PROPERTY III | 0.00 | 0.00 | None |

```
                              LEE COUNTY SHERIFF'S OFFICE
03/25/2008     07:27:43          INMATE RELEASE SHEET                      PAGE     1
====================================================================================
BOOKING NO: 070005179

INMATE NAME: SANFORD JEFFERY BERNARD
      ALIAS:                                      RACE: B        SEX: M
      ALIAS:                                      HT: 6'01"  HAIR: BLK
    ADDRESS: 212 RODDEN CT #510                   WT: 255    EYES: BRO
 CITY/ST/ZIP: OPELIKA, AL 36801               COMPLEX:
 HOME PHONE: 000-745-0325                        SSN: 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
        DOB: 12/30/1965  AGE:  42             DL ST: AL      DLN: 30126609
 PLCE BIRTH: INDIANAPOLLIS                       SID:
      STATE: IN                               LOCID: 3823
  M. STATUS:
   RELIGION: CHRISTIAN
 GANG ASSOC: NONE
SCARS/TATTOOS: NONE
KNOWN ENEMIES: NONE
    REMARKS: NONE
-------------------------- NEXT OF KIN ----------------------------------
 NEXT OF KIN: JOAN FOREMAN              RELATIONSHIP: FRIEND
     ADDRESS: SAA                              PHONE: 000-864-0973
 CITY/ST/ZIP: ,
     REMARKS:
-------------------------- EMPLOYER INFO --------------------------------
    EMPLOYED: N
EMPLOYER NAME: SOUTHERN UNION
     ADDRESS:
 CITY/ST/ZIP: OPELIKA, AL 36801
       PHONE: 334-745-0325
-------------------------- MEDICAL -------------------------------------
  HANDICAPPED: Y  NEEDS:
     GLASSES: N  SMOKE: N
MEDICAL NEEDS: N  NEEDS: N
   PHYSICIAN:                     PHONE: 000-000-0000
     REMARKS:

     REMARKS: ALLERGEIC TO PENNCILLIN, WASP STINGS, BEE STINGS
     REMARKS:
-------------------------- PROPERTY ------------------------------------
       CASH:      $02.50
 DESCRIPTION:
ADD. PROPERTY: WATCH, WALLET,
ADD. PROPERTY:
ADD. PROPERTY:
  BIN NUMBER: 416
VEH IMPOUNDED:
  IMPOUND LOT:
     REMARKS:
     REMARKS:
====================================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.
```

INMATE: _refused to sign_ _(CW)_        DATE: 3/___     TIME: _____

BOOK OFFICER: _____        DATE: /25         TIME: _____

```
                           LEE COUNTY SHERIFF'S OFFICE
03/25/2008      07:27:43       INMATE RELEASE SHEET              PAGE    2
================================================================================
BOOKING NO: 070005179      INMATE NAME: SANFORD JEFFERY BERNARD
================================================================================
        COURT: MUNICIPAL            ATTORNEY ON REC:
        JUDGE:                           PHONE: 000-000-0000
        REMARKS: COURTDATE 11-21-07 AT 1:30PM
        REMARKS:
      --------------------------------------------------------------
     BOOK DATE: 09/12/2007  BOOK TIME: 11:17  BOOK TYPE: NORMAL

    ARREST DATE: 09/12/2007         BOOKING OFFICER: PEAVY
    ARREST DEPT: OPD                CELL ASSIGNMENT:
  ARRST OFFICER: WALTERS               MEAL CODE: 02  STATE
  PROJ. RLSDATE: 00/00/0000             FACILITY: 01  COUNTY JAIL
   SEARCH OFFCR: PEAVY             CLASSIFICATION:
    TYPE SEARCH: PAT                 WORK RELEASE: N
  INTOX RESULTS:

        HOLDS: N
       AGENCY: PROBATION        REASON: DROPPED 2-22-8 DB
       AGENCY:                  REASON:
       AGENCY:                  REASON:
       AGENCY:                  REASON:

        NOTES:
        NOTES:
        NOTES:
================================================================================
  RELEASE DATE: 03/25/2008  RELEASE TIME: 07:22    # DAYS SERVED:  196

RELEASE OFFICER: SGT LYLES
   RELEASE TYPE: KILBY
        REMARKS: TRPTED TO KILBY BY CPT WELCH.
        REMARKS:
        REMARKS:
================================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE: Refused to sign paperwork   DATE: 3/    TIME:_____

BOOK OFFICER:_____DBY_____   DATE: /25    TIME:_____
```

```
                         LEE COUNTY SHERIFF'S OFFICE
03/25/2008    07:27:43      INMATE CHARGE SHEET              PAGE    3
==============================================================================
BOOKING NO: 070005179    INMATE NAME: SANFORD JEFFERY BERNARD
==============================================================================
   CHARGE NO:  1  DISPOSITION: RELEASED           HOLD: N

ALA STATUTE: 13A-8-5                  # OF COUNTS:   1
    OFFENSE: THEFT OF PROPERTY III    WARRANT #:
     CASE #:
    BOND AMT: 500                               FINE:      $0.00
    BAIL AMT: 500
INIT APPEAR: 00/00/0000              SENTENCE DATE: 00/00/0000
RELEASE DTE: 00/00/0000
ARREST DATE: 09/12/2007               ARST AGENCY: OPD
ARST OFFICR: WALTERS                       COUNTY: LEE
      COURT: MUNICIPAL                       JUDGE:
DEF ATTORNY:                        DIST ATTORNEY:
   COMMENTS:
   COMMENTS: COURTDATE 11-21-07 AT 1:30PM
   COMMENTS:
------------------------------------------------------------------------------
   CHARGE NO:  2  DISPOSITION: RELEASED           HOLD: N

ALA STATUTE: DR96-000492.00           # OF COUNTS:   1
    OFFENSE: C/S                       WARRANT #: DR96-000492.00
     CASE #:
    BOND AMT: NB                                 FINE:      $0.00
    BAIL AMT: NB
INIT APPEAR: 00/00/0000              SENTENCE DATE: 00/00/0000
RELEASE DTE: 03/25/2008
ARREST DATE: 09/12/2007               ARST AGENCY: LCSO
ARST OFFICR: CPL.JONES                     COUNTY: LEE
      COURT:                                   JUDGE:
DEF ATTORNY:                        DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS: INMATE RELEASED BY L43D10
------------------------------------------------------------------------------
   CHARGE NO:  3  DISPOSITION: SENTENCED          HOLD: N

ALA STATUTE: CC-06-37                 # OF COUNTS:   0
    OFFENSE: TOP II                    WARRANT #: CC-06-37
     CASE #: CC-06-37
    BOND AMT: 10 YRS                             FINE:      $0.00
    BAIL AMT:
INIT APPEAR: 00/00/0000              SENTENCE DATE: 11/15/2007
RELEASE DTE: 00/00/0000
ARREST DATE: 11/15/2007               ARST AGENCY: LEE CO
ARST OFFICR: LEE CO COURT                  COUNTY: LEE CO
      COURT: CIRCUIRT                         JUDGE: WALKER
DEF ATTORNY:                        DIST ATTORNEY:
   COMMENTS: INMATE  GIVEN 504 DAYS JAIL CREDIT
   COMMENTS:
   COMMENTS:
------------------------------------------------------------------------------
```

# EXHIBIT 2

Lee County Sheriff's Department
Policy and Procedure Manual,
Section 8 – Emergency Situations,
Title 8.01 "Emergency Plans and Procedure."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **EMERGENCY SITUATIONS** | **SECTION 8** |
| <u>Emergency Plans and Procedures</u> | **Title 8.01** |

### <u>Policy</u>

It is the policy of the Lee County Sheriff's Department that members of the Lee County Detention Center staff be prepared for emergency situations which may be encountered within the Lee County Detention Center and be prepared to take steps to safeguard the lives of all persons within the facility at such times.

### <u>Procedure</u>

1.      The following situations shall be, in each instance, deemed to be an emergency situation:

      a.      emergency release and evacuation;
      b.      fire;
      c.      escapes;
      d.      riots;
      e.      hostage situations;
      f.      mass arrests;
      g.      death in the Detention Center.

2.      Emergency situations not directly addressed by policies contained within this manual shall be handled by the staff in a timely and responsible manner.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**      01-01-2006

# EXHIBIT 3

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 8 – Emergency Situations,
Title 8.03 "Emergency Door Operation."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **EMERGENCY SITUATIONS** | **SECTION 8** |
| **Emergency Door Operation** | **Title 8.03** |

## *Policy*

It is the policy of the Lee County Sheriff's Department that safe and efficient evacuation of staff, visitors, and inmates be ensured in the case of an emergency by having all members of the Lee County Detention Center staff be familiar with the Detention Center's door operations.

## *Procedure*

1.  All members of the Detention Center staff will be trained in the use of the manual door release system in the housing areas and in the use of keys in the facility.

2.  All members of the Detention Center staff should be familiar with the identification of all keys and their use and access.

3.  Shift Supervisors shall be responsible for ensuring that all members of the Detention Center staff are familiar with the door release systems and evacuation procedures in order to ensure prompt release of inmates in case of an emergency in any area of the facility. Familiarization with keys and release systems shall be included as a part of the facility's training program.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** ___01-01-2000___

# EXHIBIT 4

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 8 – Emergency Situations,
Title 8.04 "Fire and Safety Requirement."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **EMERGENCY SITUATIONS** | **SECTION 8** |
| **Fire and Safety Requirements** | **Title 8.04** |

### Policy

It is the policy of the Lee County Sheriff's Department that the safety of employees, inmates, and visitors at the Lee County Detention Center be maximized through a compliance with local and national fire safety requirements.

### Procedure

1.      The Lee County Sheriff's Department shall maintain at or for the Lee County Detention Center:

      a.      An adequate fire protection service;

      b.      A system of fire inspection, equipment testing, and an annual policy and procedure review;

      c.      Fire extinguishers at appropriate locations throughout the facility;

      d.      An automatic fire alarm and smoke detection system;

      e.      Facility furnishings made of materials which indicate fire safety performance;

      f.      Interior finishing materials in accordance with recognized fire safety codes;

      g.      Non-combustible receptacles for smoking materials;

      h.      Distinctly and permanently marked exits;

      i.      Travel distances to exits which are in compliance with fire safety codes;

      j.      Necessary equipment to maintain lights, power, and communications during an emergency.

2.    Fire control and safety inspections shall be conducted weekly in conjunction with the weekly sanitation inspection. The inspecting officer may note any problems found during the inspection, and bring them to the attention of the Chief Deputy Sheriff or other appropriate officer. Such problems should be, if possible, immediately corrected.

3.    All inspection reports should be submitted to the Chief Deputy Sheriff and filed.

4.    An evaluation of the adequacy of fire and safety procedures will be conducted for the entire facility by the Chief Deputy Sheriff once each quarter. Inspection and testing of the following systems will be made:

    a.    automatic fire alarm;
    b.    smoke detection system;
    c.    all emergency equipment and lighting;
    d.    exits;
    e.    evacuation plans;
    f.    fire code compliance.

5.    All policies and procedures related to fire and light safety, including emergency procedures, are to be reviewed annually.

6.    It is the responsibility of the Chief Deputy Sheriff to ensure that emergency equipment is repaired or replaced as necessary.

7.    Fire prevention is the most important aspect of an effective fire protection program and, therefore, every employee at the Lee County Detention Center should be alert to possible fire hazards in the facility. Such hazards include:

    a.    altered electrical outlets;
    b.    overloaded electrical units;
    c.    expended fire extinguishers;
    d.    improper trash accumulation or storage;
    e.    improper storage of combustible material.

8.    All employees shall continually monitor all aspects of fire safety as they apply to their assigned tasks in the Detention Center.

9.    All incidents of fire hazards will be immediately corrected. If the hazard or condition cannot be immediately corrected, it will be reported to the Fire Safety Officer and/or the Chief Deputy Sheriff for proper corrective action.

10.    Fires may be prevented by observing and enforcing the following rules:

    a.    Trash should be disposed of as necessary, but at least daily.

    b.    Hoarding paper products and other flammable materials is prohibited.

    c.    Combustible materials allowed in the inmate's cells are limited according to Authorized Inmate Property Guidelines described in the Inmate Handbook.

    d.    All flammable materials must be stored in accordance with the policies and procedures set out in this manual for control and storage of caustics, flammables and toxics.

    e.    Electrical hazards, such as overloaded outlets, are prohibited.

11.    A floor plan showing evacuation routes should be kept current and available to inmates and members of the Detention Center staff in all areas of the Detention Center facility.

12.    Fire drills should take place at least twice yearly at the discretion of the Chief Deputy Sheriff and to the extent he deems to be within security guidelines.


**By Order of:**

Jay M. Jones, Sheriff

**Effective Date:** _____01-01-2000_____

**Reference Forms:**    **19    Maintenance Request Form**
                   **20    Detention Center Inspection Report**
                   **32    Inmate Handbook**

# EXHIBIT 5

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 2 – Administration, Organization, and
Management, Title 2.10 "Fire Safety."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **ADMINISTRATION, ORGANIZATION, AND MANAGEMENT** | **SECTION 2** |
| <u>**Fire Safety Officer**</u> | **Title 2.10** |

<u>*Policy*</u>

It is the policy of the Lee County Sheriff's Department that, if necessary, the Chief Deputy Sheriff or Captain assign a member of the Detention Center staff to act as Fire Prevention Officer.

<u>*Procedure*</u>

1.    The Chief Deputy Sheriff shall appoint a Fire Prevention Officer to be an "in-house fire marshal" for the Lee County Detention Center.

2.    The Fire Prevention Officer shall make himself familiar with the various fire codes applicable to the Lee County Detention Center.

3.    The Fire Prevention Officer shall conduct or shall arrange for the presentation of training in fire prevention and basic fire fighting for the members of the Detention Center staff.

4.    The Fire Prevention Officer shall inspect and, utilizing Form Number 22, report at least twice each month on the fire safety aspects of the Detention Center.

5.    The Fire Prevention Officer shall report to the Chief Deputy Sheriff all routine inspections and any violations of fire codes.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01-01-2000

**Reference Form:**    22    **Inspection Report**

# EXHIBIT 6

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 8 – Emergency Situations,
Title 8.05 "Fire Emergency."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **EMERGENCY SITUATIONS** | **SECTION 8** |
| **Fire Emergency** | **Title 8.05** |

**_Policy_**

It is the policy of the Lee County Sheriff's Department that, in the event of a fire at the Lee County Detention Center, the primary objective of the Detention Center staff shall be the protection of lives of inmates, staff, and visitors.

**_Procedure_**

A.    **_Discovery_**

When a staff member discovers a possible fire, he must immediately notify the Shift Supervisor or dispatcher, giving the exact location and nature of the fire in order that assistance may be summoned to the Detention Center.

B.    **_Notification_**

1.    When a fire alarm system sounds or when notified of a possible fire in progress, the dispatcher should:

a.    If possible, silence the alarm in order that radio traffic may be heard;

b.    Broadcast the notification of the emergency over the radio;

c.    Immediately call the fire department through the local emergency number or by other authorized means of communication and give all available fire related information.

d.    Notify the Chief Deputy Sheriff and the Sheriff.

e.    Contact outside divisions and agencies for assistance if so ordered by the Command Officer.

C.    **_Response to a Fire in Progress_**

1.    Officers responding to a fire should take all inmates within the affected fire areas to evacuation areas according to the evacuation policy.

2.     All staff members supervising inmates should stop all inmate movement in unaffected areas of the Detention Center until an all clear is given or they are ordered to evacuate.

3.     Members of the Detention Center staff should not leave their assigned housing areas, but should remain at their posts for further instruction. They must be prepared to evacuate their area by using the manual release system.

4.     The Shift Supervisor should place a member of the Detention Center staff or a deputy sheriff at the facility entrance to admit fire fighters and escort them to the scene of the fire. He should also direct movement officers to help supervise unaffected housing areas, if any.

5.     After all inmates are secured, the Shift Supervisor should decide if the staff should try to extinguish the fire before the fire department arrives. If so, staff will use appropriate fire fighting equipment as necessary.

6.     All other available officers should help to escort visitors outside the Detention Center and maintain facility security.

7.     If the entire Detention Center requires evacuation, local law enforcement agencies should be contacted to provide security and transportation if inmates must be relocated to another institution.

8.     After evacuation, a count will be conducted to ensure that all inmates are safe and present.

9.     Members of the Detention Center staff will not re-enter the Detention Center for any reason after it has been evacuated unless permission is given by the Shift Supervisor, Chief Deputy Sheriff, or Sheriff.

10.     If the Detention Center may be re-entered, evacuated inmates may be returned to their housing areas when fire fighters announce that it is safe to do so.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01-01 85
**Reference Form:**    10    **Incident Report**

# EXHIBIT 7

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 2 – Administration, Organization, and
Management, Title 2.02 "Code of Ethics."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **ADMINISTRATION, ORGANIZATION, AND MANAGEMENT** | **SECTION 2** |
| **Code of Ethics** | **Title 2.02** |

*Policy*

It is the policy of the Lee County Sheriff's Department that members of the Lee County Detention Center staff conduct themselves in a manner so as to ensure that inmates and their families are dealt with in a constitutional, honest, fair, and impartial manner.

*Procedure*

1. Except as permitted by written authority by Detention Center command, a member of the detention center staff shall not fraternize with, engage the services of, or do favors for any person in the custody of the Lee County Sheriff's Department.

2. Employees of the Lee County Sheriff's Department shall not discriminate against any inmate on the basis of race, religion, gender, creed, or national origin.

3. Employment of corporal punishment or unnecessary use of physical force is forbidden.

4. Members of the detention center staff shall never intentionally demean or humiliate an inmate, a member of an inmate's family, or a visitor to the Detention Center.

5. The discussion of staff members or inmates in the presence of any inmate is strictly forbidden.

6. Members of the Detention Center staff shall not divulge confidential information without authorization.

7. Members of the Detention Center staff shall not inquire about, disclose, or discuss details of any inmate's civil or criminal cases other than as may be absolutely necessary in the performance of their official duties.

8.    Nothing in this Policy and Procedure Manual shall prohibit an employee of the Lee County Sheriff's Department from advising or counseling an inmate to resolve a personal problem so long as the officer does so in good faith and in accordance with law and these regulations.

9.    No member of the Lee County Sheriff's Department will exchange personal gifts or favors with an inmate, their families, or their friends, or accept any form of bribe or unlawful inducement from such persons.

10.    No member of the Lee County Sheriff's Department will perform duties at the Lee County Detention Center while under the influence of intoxicants or consume intoxicants while on duty.

11.    No member of the Detention Center staff will leave their post of duty without permission from the Sheriff, or Chief Deputy Sheriff, Lieutenant, Sergeant, or Shift Supervisor.

12.    No member of the Detention Center staff will violate or disobey established rules, regulations, or lawful orders of a superior officer.

13.    No member of the Detention Center staff will bring any type of weapon or item declared as contraband into the detention center without proper authorization from the Sheriff or Chief Deputy Sheriff.

14.    All members of the Lee County Detention Center staff will be familiar with the policies and procedures contained in the Lee County Sheriff's Department Policy and Procedure Manual.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01-01-2000

# EXHIBIT 8

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 14 – Inmate Rights,
Title 14.01 "Inmate Rights."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **INMATE RIGHTS** | **SECTION 14** |
| **<u>Inmate Rights</u>** | **Title 14.01** |

## <u>Policy</u>

It is the policy of the Lee County Sheriff's Department that Sheriff's Department personnel employed at the Lee County Detention Center be aware of and protect inmate rights, both civil and legal. These rights include:

a.    Freedom from discrimination based on race, religion, national origin, sex, handicap or political beliefs;

b.    Equal access to programs and work assignments;

c.    Protection from personal abuse, corporal punishment, personal injury, disease, property damage, and harassment; and

d.    Freedom from reprisals or penalties as a result of seeking administrative or judicial redress.

## <u>Procedure</u>

1.    All employees having direct contact with inmates must treat them respectfully and courteously.

2.    All inmates shall have equal access to programs, services, activities, and work assignments. Assess will be denied only to maintain security, order, or for other legitimate penalogical reasons such as a loss of privileges as a result of disciplinary action.

3.    Detention Center staff may use only the minimum physical force necessary to control combative or uncooperative inmates. Physical abuse may not be used to punish an inmate for a rule violation.

4.    Discipline will be fairly and equally administered.

5.    The Sheriff and Chief Deputy Sheriff will review policies and procedures annually to be

sure that all rights to which the inmates are entitled are being upheld.

6.    The Chief Deputy Sheriff will ensure that all Detention Center personnel receive training in inmate rights.  This training will include, but not be limited to:

   a.    The proper execution of policies and procedures necessary to ensure the rights of inmates; and

   b.    Report writing and documentation of procedures implemented to ensure the rights of inmates.

**By Order of:**

**Jay M. Jones, Sheriff**
**Effective Date:**    01-01-2000

# EXHIBIT 9

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 14 – Inmate Rights,
Title 14.06 "Religion."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **INMATE RIGHTS** | **SECTION 14** |
| <u>Religion</u> | **Title 14.06** |

## *Policy*

It is the policy of the Lee County Sheriff's Department to allow persons incarcerated in the Lee County Detention Center the opportunity to worship in the recognized religion of their choice, receive religious counseling, and attend in-house religious programs.

## *Procedure*

1.  Religious professionals and religious volunteers who wish to provide scheduled religious programs must be cleared by the Chief Deputy Sheriff before being admitted to the Detention Center.

2.  All religious visitors are subject to search and must comply with all visitor regulations.

3.  Religious volunteers who are approved may go into the dayroom and provide ministry in general population areas to those inmates who wish to participate.

4.  Religious volunteers may also make use of the multi-purpose area in order to hold religious services.

5.  Inmates in administrative segregation may receive ministry individually only.

6.  Detention Center officials may end or limit a ministry session or limit the number of religious volunteers if necessary.

7.  Religious services may be scheduled for a set time each week. Other services may be scheduled for other times with the Chief Deputy Sheriff's approval.

8.  No inmate who, in the opinion of the Sheriff, Chief Deputy Sheriff, or Shift Supervisor, presents a security risk may attend religious services. Such inmates will be allowed free access to religious counseling or conferences on an individual basis.

9.  No member of the Detention Center staff may discriminate against any inmate on the basis on that inmate's choice of religion.

10.    The Lee County Sheriff's Department will not provide any religious materials of any nature to inmates at Sheriff's Department's expense.

11.    Inmates requesting marriage, baptism services, or to attend funeral services shall be instructed to contact an attorney in order to request a court order.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01-01-2000

# EXHIBIT 10

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 14 – Inmate Rights,
Title 14.07 "Exercise."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **INMATE RIGHTS** | **SECTION 14** |
| <u>Exercise</u> | **Title 14.07** |

<u>Policy</u>

It is the policy of the Lee County Sheriff's Department to provide persons incarcerated in the Lee County Detention Center with a variety of leisure activities for the purpose of therapy, education, and recreation participation.

<u>Procedure</u>

1.    All inmates may participate in programs and activities unless security and safety concerns dictate otherwise.

2.    Inmates serving time in administrative segregation for disciplinary reasons are not permitted to attend programs outside their housing area but are permitted one hour of recreation per day outside their housing area.

3.    General population inmates will be allowed to participate in organized recreation programs, have access to available board games and playing cards, and have access to televisions and radios during reasonable hours.

4.    Security and weather conditions permitting, inmates will be allowed one hour of outside exercise at least five days each week.

5.    Use of outdoor recreation is at the Shift Supervisor's discretion.

6.    Members of the Detention Center staff may limit the number of people using the outdoor recreation area at any one time.

7.    All special activities including games, holiday related programs, or other events scheduled in addition to daily activities may be participated in by all general population inmates.  No such event will occur unless adequate supervision by members of the Detention Center staff is available.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** ___01- 01- 2000___

# EXHIBIT 11

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 15 – Inmate Programs and Services,
Title 15.01 "Program Goals."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **INMATE PROGRAMS AND SERVICES** | **SECTION 15** |
| **Program Goals** | **Title 15.01** |

## Policy

It is the policy of the Lee County Sheriff's Department to, through incarceration of persons at the Lee County Detention Center, provide protection for the public.   Beyond the obligation to confine inmates in a secure setting, it is the policy of the Lee County Sheriff's Department to provide programs for inmates which are necessary to meet their individual physical, social, and emotional needs and ensure, at a minimum, that when each inmate is returned to his community, he poses no greater a threat to the public than when committed to the Lee County Detention Center.

## Procedure

1.  The Chief Deputy Sheriff shall continually assist programs being offered to inmates and shall write an annual report to the Sheriff which will analyze the extent of the programs provided, inmate use of the programs, quality of the programs, and shall make proposals for the future.

2.  Members of the Detention Center staff shall encourage inmates to participate in programs offered at the Detention Center, but all inmates have the option to refuse to participate if they so choose, except in those programs or work assignments required by the law or court order.

3.  The refusal of an inmate to participate in any optional program shall not be held as a reason for punishment or denial of future participation.


**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _____ 01-01-2000

# EXHIBIT 12

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 7 – Security,
Title 7.01 "Security"

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **SECURITY** | **SECTION 7** |
| Security | Title 7.01 |

### Policy

It is the policy of the Lee County Sheriff's Department that the Lee County Detention Center be maintained in a secure manner at all times in order to ensure public protection and the safe housing of all inmates.

### Procedure

A.    *General*

1.    All personnel will be trained in all aspects of the security systems and methods in place at the Lee County Detention Center.

2.    All Detention Center personnel will be provided with ongoing training in security practices.

3.    The Chief Deputy Sheriff, Captain, and Lieutenant will inspect all security devices at least monthly.

4.    The Chief Deputy Sheriff, Captain, and Lieutenant will observe personnel as they implement security procedures to ensure proper execution.

5.    The Chief Deputy Sheriff, Captain, and Lieutenant will ensure that a positive relationship exists between staff and inmates and that such a relationship is maintained in order to secure safety and control.

6.    The Chief Deputy Sheriff, Captain, and Lieutenant will submit to the Sheriff written reports as needed, identifying any security problems which exist and shall recommend plans of action necessary to correct such problems.

B.    *Detention Center Office*

1.    The Detention Center office will be staffed 24 hours per day, 7 days a week, by trained officers.

2.  The Shift Supervisor will not allow a visitor to enter Detention Center unless that person is authorized by a member of the staff.

3.  Whenever a visitor enters the Detention Center, the member of the staff admitting the visitor will enter the visitor's name and reason for entry on the Detention Center log.

4.  The Chief Deputy Sheriff and Captain will ensure that the following are kept in the Detention Center office at all times:

    a.  A copy of the Detention Center Policy and Procedure Manual.

    b.  A copy of the Detention Center evacuation plan.

    c.  An updated roster of all personnel of the Lee County Sheriff's Department, including addresses, telephone numbers, and titles.

    d.  A list of emergency telephone numbers.

5.  No weapons will be brought into the Detention Center.


**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**     01-01-2000

# EXHIBIT 13

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 7 – Security,
Title 7.10 "Facility Inspections."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **SECURITY** | **SECTION 7** |
| **Facility Inspections** | **Title 7.10** |

## *Policy*

It is the policy of the Lee County Sheriff's Department to maintain security at the Lee County Detention Center by regular inspection of all areas of the facility in order to properly supervise the staff and inmates and to ensure that the physical facility is operating properly.

## *Procedure*

A.    *Shift Supervisors*

1.    At least once during each shift, the Shift Supervisor shall visit and inspect every area of the facility.

2.    The Shift Supervisor should observe and confer with all officers on duty to assess morale, concerns, and job performances.

3.    During visits to the housing area, the Shift Supervisor should also assess inmate morale and concerns and discuss any management problems with the inmates.

4.    During facility inspections, the Shift Supervisor should check for faulty equipment and unsafe or unsanitary conditions.

5.    The Shift Supervisor should document housing and booking area visits and facility inspections on the Detention Center log.

6.    Any matters requiring further attention which are discovered by the Shift Supervisor should be reported to the Captain if the supervisor is unable to immediately alleviate the problem.

B.    *Lieutenant*

1.    At least two times each week, the Captain or his designee will inspect the facility's living and activity areas and complete an Inspection Report.

2.    The Captain should check to make sure that the facility is operating according to policy and that the living and activity areas are in a safe and sanitary condition.

3.    During such inspections, the Captain should be accessible to both the Detention Center staff and inmates in order to facilitate informal communications with them.

C.    *Other Inspections*

1.    A member of the Detention Center staff should conduct an inspection of the entire facility at least once each hour.

2.    A check of the outside of the facility should be conducted at least once every hour from dusk until dawn.

3.    The result of all security checks should be entered on a Detention Center log.

4.    The senior officer on duty should be notified in the event of discovery of anything out of the ordinary during any check or inspection.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _____ 01-01-2000

**Reference Form:**        22      **Detention Center Inspection Report**

# EXHIBIT 14

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 15 – Inmate Programs and Services,
Title 15.03 "Commissary."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **INMATE PROGRAMS AND SERVICES** | **SECTION 15** |
| **Commissary** | **Title 15.03** |

## Policy

It is the policy of the Lee County Sheriff's Department that commissary services be provided to inmates incarcerated in the Lee County Detention Center in order that they may buy certain personal and food items not provided by the Sheriff's Department.

## Procedure

A.    *Commissary Services*

1.    Commissary will be held at the Lee County Detention Center one time each week for all inmates not housed in administrative segregation or otherwise prohibited from participating. Commissary items shall include a variety of candy, writing materials, and personal hygiene items, when available.

2.    Inmates may purchase commissary items by paying cash when they receive their orders.

3.    Inmates being held in disciplinary detention may not utilize the commissary except to purchase stamps.

B.    *Commissary Fund*

1.    All commissary proceeds are placed in an inmate commissary fund to be used for inmate program needs, commissary supply purchases, and needs of the Detention Center.

2.    Inmates in the Lee County Detention Center may make suggestions for the use of money contained in the commissary fund by filling out an Inmate Request form.

3.    The commissary manager shall handle all commissary supplies, orders and shall approve normal expenditures.

4.    The canteen manager shall be responsible for the purchase of all commissary items after gaining approval for such persons from the Corrections Administrator.

5.     The canteen manager and the Corrections Administrator are to be the only persons authorized to write checks from the commissary system.

C.     *Accounting*

1.     The canteen manager shall maintain an accurate bookkeeping system to account for all commissary transactions.

2.     A monthly financial statement shall be submitted to the Sheriff and Chief Deputy Sheriff for their review.

3.     The canteen manager shall prepare a yearly statement, due September 1 of each year, summarizing all commissary system transactions and submitted to the Sheriff and Chief Deputy Sheriff.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**       01 - 01 - 2000

**Reference Form:**       8       **Inmate Request Form**

# EXHIBIT 15

Lee County Sheriff's Office
Policy and Procedure Manual,
Section 14 – Inmate Rights,
Title 14.04 "Inmate Requests and Grievances.

| INMATE RIGHTS | SECTION 14 |
| --- | --- |
| **Inmate Requests and Grievances** | **Title 14.04** |

## Policy

It is the policy of the Lee County Sheriff's Department that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the Sheriff, Chief Deputy Sheriff, or Detention Center personnel.

## Procedure

A.  *Requests*

1.  Requests for medical attention, telephone calls, or other matters must be made in writing on an Inmate Request Form.

2.  An exception exists for requests of an emergency nature which will be handled immediately without a written request.

3.  All requests will be routed to the Chief Deputy Sheriff and, if necessary, forwarded by him to the proper authority.

4.  Inmates housed in the Lee County Detention Center will be furnished with Inmate Request Forms for the purpose of stating their requests or grievances in writing.

5.  Detention Center personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate.

B.  *Grievances*

1.  Inmates are encouraged to informally resolve grievances between themselves and members of the staff when possible.  If this is not possible, the inmate may complete a request form stating his grievance.

2.  The staff member receiving the Inmate Request Form must sign it, date it, and note the

time of day it is received.

3.    If possible, the member of the Detention Center staff receiving a grievance should answer it but, if he cannot do so, it should be forwarded to the Chief Deputy Sheriff for further action.

4.    The staff member answering the grievance must decide if a staff member or inmate has acted improperly, if an inmate's rights were violated, if privileges were unjustly denied, of if a crime was committed.  After reviewing the grievance, he must write his response on the Inmate Request Form, giving findings which substantiate or disprove the complaint and, if applicable, a remedy.  This person must also sign, date, and note the time of his response on the request form.

5.    After the above process is completed, a copy of the request form containing the response is made and delivered to the inmate.  This should be done within 72 hours of the time the grievance is received, excluding weekends and holidays.

6.    Grievances should be first answered by the appropriate staff member at the lowest level in the chain of command.

7.    If an inmate is dissatisfied with the response he receives, he may appeal, in writing, to the next higher level in the chain of command of the Sheriff's Department.

8.    The original copy of the inmate's grievance, containing the response by Detention Center officials, shall be placed in the inmate's Detention Center file.

9.    No negative sanction may be taken against any inmate for filing a grievance.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01-01-2000

**Reference Forms:**        8      **Inmate Request Form**

# EXHIBIT 16

Lee County Detention Center
Policy & Procedure Manual,
Section 12, "Food Services."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **FOOD SERVICES** | **SECTION 12** |
| <u>Menu Preparation</u> | **Title 12.01** |

<u>*Policy*</u>

It is the policy of the Lee County Sheriff's Department that inmates incarcerated in the Lee County Detention Center be provided with a nutritionally adequate diet.

<u>*Procedure*</u>

1.  In order to provide a nutritionally balanced diet to inmates in the Lee County Detention Center, menus will be prepared three weeks in advanced and reviewed by a registered dietician.

2.  After service of each meal, the Detention Center dietician shall verify by his signature on the menu, that the food service staff has adhered to the approved menu with the exception of documented substitutions.

3.  The food service staff shall document all substitutions in or modification of menus. The food service supervisor will make sure that meals which have been modified or items which have been substituted are equal in nutritional values to those originally planned for.

4.  Under no circumstances may any meals be modified for disciplinary purposes or as a reward for good inmate behavior.

5.  Inmates will be served three meals each day at regularly scheduled times. At least two of these meals will be hot and there shall be no more than 14 hours between the evening meal and breakfast.

6.  All meals will be served at the appropriate temperature as soon as possible after they are prepared.

7.  Consideration will be given to texture, color, flavor and appearance in food preparation.

8.    Unless exceptional circumstances warrant, all meals served to inmates will be prepared in
the kitchen at the Lee County Detention Center under the supervision of the food service
staff and the Detention Center dietician.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01 – 01 – 2000

**Reference Form:**        18        Detention Center Menu Report

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| FOOD SERVICES | SECTION 12 |
|---|---|
| **Special Diets** | **Title 12.02** |

*Policy*

It is the policy of the Lee County Sheriff's Department that the Lee County Detention Center provide inmates incarcerated therein special diets when they are prescribed by medical personnel.

*Definition*

*Special Diet:* Special meals or food items prepared for an inmate according to his medical needs or religious beliefs.

*Procedure*

1.    If an inmate asks for a special diet when he is booked, the booking officer will document this on the booking sheet and, if appropriate, a Health History form. The Detention Center dietician (corrections officer) will, on that shift or the next shift which he works, discuss the religious or medical dietary needs of the inmate with him.

2.    If the inmate requests a special diet for medical dietary needs, an appointment will be made for him with the Detention Center physician who will be responsible for the ultimate decision in such a matter and make recommendations to the Detention Center staff accordingly.

3.    If it is determined that an inmate needs a special medical diet, the diet will be forwarded to the attention of the dietician (corrections officer) at the Detention Center.

4.    Special diets will be kept simple and as similar as possible to the meals served to other inmates.

5.    All special diets should be nutritionally adequate and meet the same standards as meals served to the general inmate population.


**By Order of:**


Jay M. Jones, Sheriff
**Effective Date:** _____ 01-01-2000


**Reference Forms:**     2      **Booking Sheet**
                         9      **Health History**
                        18      **Detention Center Menu Report**

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **FOOD SERVICES** | **SECTION 12** |
| <u>Health, Safety and Sanitation</u> | **Title 12.03** |

<u>*Policy*</u>

It is the policy of the Lee County Sheriff's Department that adequate health protection be provided at the Lee County Detention Center for all members of the Detention Center staff and inmates by requiring persons working in the food service area to meet established health and sanitation standards.

<u>*Procedure*</u>

A.    *General*

1.    Inmate food service personnel will be examined by the facility physician or Health Department and given a tuberculosis test before they begin work.

2.    The general health of all food service personnel, including inmates, will be monitored daily by the dietician (corrections officer) in order to ensure that they are free from illness which may be transmittable by food.

3.    All persons working in the food service area will be monitored for cleanliness by the Detention Center dietician (Corrections Officer) or, in his/her absence, the Shift Supervisor.

4.    All persons working in the food service area will be instructed to wash their hands upon returning to work after using toilet facilities.

5.    All persons working in the food service area will wear hair restraints.

6.    Kitchen trusties will be required to shower at least once each day or, if necessary, more often, and to have clean laundry daily.

7.    The dietician shall be charged with the responsibility of checking the refrigerator, freezer, and dish water temperatures daily.   This inspection will be logged on the Detention Center log.

8.    The chief cook will be charged with cleaning of all kitchen areas on an ongoing basis.

9.    The Chief Deputy Sheriff or Captain will inspect all food service areas weekly, including dining and food preparation areas and equipment to make sure they meet safety and sanitation standards.  These inspections will be documented on the Detention Center log.

10.    Members of the Detention Center staff will cooperate with the Alabama Department of Public Health, the Alabama Department of Corrections and any other agency inspecting the Detention Center and/or the Detention Center's kitchen.

11.    Any problems noted during the inspection of the kitchen or food service areas will, if possible, be immediately remedied.


B.    *Sanitation Procedures*

1.    The Detention Center cook will inspect the food service areas after each meal to ensure that the areas are clean and sanitary.

2.    The Detention Center cook will inspect and ensure that all food service equipment is cleaned after each use.

3.    The Detention Center cook will inspect all utensils, trays, and cups to ensure that they are washed and sterilized after each use.

4.    The dietician (corrections officer), as above, will ensure that the water temperature of the sterilizer is correct and in compliance with local health regulations.

5.    The Detention Center cook will ensure that the kitchen floors are swept and mopped after each meal has been served.

6.    The Detention Center cook will ensure that all refrigerators and freezers are clean and frost free.

7.    The Detention Center cook will ensure that counter tops and work areas are cleaned after each use.

8.    The Detention Center cook will ensure that a thorough cleaning of all food service and storage areas takes place at least once each week.

9.    The Detention Center cook will ensure that all walls, exposed piping, fans, and lights are

cleaned as needed.

10.    The second Shift Supervisor shall supervise the Detention Center cook in all the above operations.

11.    No smoking will be permitted in the Detention Center kitchen.

C.    *Food Preparation*

1.    The Detention Center cook will ensure that all meals are prepared in clean and sanitary conditions.

2.    The Detention Center will serve only government inspected meats and poultry.

3.    No home canned or preserved foods will be served.

4.    All raw foods to be served will be washed and cleaned thoroughly in safe water before being served.

5.    The second Shift Supervisor will ensure that all aspects of this policy are strictly adhered to.

D.    *Feeding Procedures*

1.    The Detention Center cook will notify the Detention Center staff as soon as meals are ready to be served.

2.    A member of the Detention Center staff will observe the service of food in order to ensure that the portions of food on each tray in order to prevent favoritism.

3.    A member of the Detention Center staff will designate when assigned trusties will begin to deliver trays.

4.    As soon as the responsible Detention Center staff member has determined that all inmates have completed their meals, trusties, under direction of the Detention Center staff, will pick up all trays and count them as they are returned to the kitchen.

5.    The Captain, Shift Supervisor, and dietician will implement disciplinary procedures

against any inmates who attempt to retain trays or pilfer Detention Center food.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**          07·01· 2000

**Reference Forms:**      **10      Incident Report**
                          **28      Disciplinary Report**
                          **29      Notification of Charges**

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **FOOD SERVICES** | **SECTION 12** |
| <u>Meal Records</u> | **Title 12.04** |

## *Policy*

It is the policy of the Lee County Sheriff's Department to keep accurate records of all meals served at the Lee County Detention Center.

## *Procedure*

1.  Menus, with documentation of any substitutions and modifications, will be filed in the dietician's office.

2.  The number of meals served to both staff and inmates shall be documented on the Detention Center log.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _____01-01-2000_____

**Reference Form:**      18      **Detention Center Menu Report**

# EXHIBIT 17

Inmate Request Slips of various dates

# Lee County Detention Center
# InMATE REQUEST SLiP

408

Name GEFFREY SANFORD    Date 10-11-07

2ND SHIFT Sup.

**LOCATION**

☐ Telephone Call        ☐ Doctor          ☐ Dentist
☐ Special Visit         ☐ Personal Problem ☐ Other    ☐ Time Sheet
                                          LAW LIBRARY

Briefly Outline Your Request. Give To Jailer

REQUESTING TO GO TO LAW LIBRARY
TO RESEARCH LEGAL SITUATION AND
CASE.' THIS THE 4TH REQUEST.'
          PLEASE CONSIDER.
          THANK YOU.'

Do Not Write Below This Line - For Reply Only

Taken 11-9-07 Red Night

— Cpl. Parkelis

Approved _____ Denied _____ Collect Call

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To
Those The Request is Directed.

☐ Lieutenant        ☐ Chief Deputy        ☐ Sheriff

Date _____        Time Received _____

CORRECTION OFFICER _____

FORM: LCS-038 (6/99)

Lee County Detention Center

# INMATE REQUEST SLIP

CAPT. WELCH / MAJ TOLBERT

408

**LOCATION**

Name JEFFERY B. SANFORD    Date 11-01-07

☐ Telephone Call    ☐ Doctor    ☐ Dentist    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☐ Other

Briefly Outline Your Request.  Give To Jailer  KEPT YELLOW COPY FOR RECORD

I HAVE NOT BEEN ALLOWED ACCESS TO
THE LAW LIBRARY FOR THE PAST 4
WEEKS, THE SECOND SHIFT SUPV. ARE
NOT ALLOWING INMATES IN 100-600
AREA AN OPPORTUNITY TO GO INTO THE
LAW LIBRARY TO PREPARE FOR PRE-
TRIAL ON NOV 15, 07, WHEN OTHER'S HAVE.

Do Not Write Below This Line - For Reply Only  PLEASE CORRECT THIS
THANK YOU!

Approved _____  Denied _____  Collect Call _____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request is Directed.

☐ Lieutenant    ☐ Chief Deputy    ☐ Sheriff

Date _____    Time Received _____

CORRECTION OFFICER _____

FORM: LCS-036 (6/99)

Lee County Detention Center

# INMATE REQUEST SLIP

E-5
**LOCATION**

-Name JEFFERY SANFORD                Date 3-6-08

☐ Telephone Call   ☐ Doctor           ☐ Dentist        ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem                  ☐ Other

Briefly Outline Your Request.  <u>Give To Jailer</u>

LAW LIBRARY RESEARCH

<u>Do Not Write Below This Line</u> - For Reply Only

Taken on 3-6-08

Approved _____  Denied _____  Collect Call_____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request is Directed.

☐ Lieutenant          ☐ Chief Deputy          ☐ Sheriff

Date _____  Time Received _____

CORRECTION OFFICER _____

FORM: LCS-038  (6/99)

Lee County Detention Center

# INMATE REQUEST SLIP

3-3-08
**LOCATION**

Name _Jeffery Sanford_     Date _____

☐ Telephone Call     ☐ Doctor     ☐ Dentist     ☐ Time Sheet

☐ Special Visit     ☐ Personal Problem     ☐ Other

Briefly Outline Your Request.  <u>Give To Jailer</u>

_Law Library_

<u>Do Not Write Below This Line</u> - For Reply Only

_Took to Law Library_

_3/3/08_

_2:00_     _Sgt. Cowl___

Approved _____     Denied _____     Collect Call _____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request is Directed.

☐ Lieutenant     ☐ Chief Deputy     ☐ Sheriff

Date _____     Time Received _____

CORRECTION OFFICER _____

FORM: LCS-036  (6/99)

Lee County Detention Center

# INMATE REQUEST SLIP

E - 5
**LOCATION**

Name JEFFERY SANFORD          Date 2 - 12 - 08

☐ Telephone Call      ☐ Doctor        ☐ Dentist      ☐ Time Sheet

☐ Special Visit       ☐ Personal Problem           ☐ Other

Briefly Outline Your Request.  <u>Give To Jailer</u>

LAW LIBRARY REQUEST

<u>Do Not Write Below This Line</u> - For Reply Only

*[handwritten reply]* Will To Law Library

2/23/08

Approved _____ Denied _____ Collect Call _____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request is Directed.

☐ Lieutenant           ☐ Chief Deputy            ☐ Sheriff

Date _____      Time Received _____

CORRECTION OFFICER _____

FORM: LCS-038 (6/99)

# EXHIBIT 18

Alabama Department of Public Health
Food Establishment/Retail Food Store
Inspection Report

# ALABAMA DEPARTMENT OF PUBLIC HEALTH
## FOOD ESTABLISHMENT / RETAIL FOOD STORE INSPECTION REPORT

SCORE **97**

_Lee_     COUNTY HEALTH DEPARTMENT

LEGAL NOTICE TO THE PROPRIETOR OR MANAGER: You are respectfully notified of such violations of the Alabama State Board of Health Rules for Food Establishment Sanitation as are indicated by a circle in the Inspection Report. This report constitutes an official notice to comply with Chapter 420-3-22 of the aforesaid Rules within a period of _____ days. Failure to comply with this notice may result in cessation of food service food store operations.

ESTABLISHMENT NAME: _Lee Co Justice Center_    OWNER OR MANAGER NAME: _Sheriff Jay Jones_

ADDRESS: _2311 Gateway Dr_    _Opelika, AL_    ZIP CODE: _36801_

| PERMIT NUMBER | MO. | DAY | YEAR | INSP. TIME | PERMITTED | PRIORITY CAT. | COMPLIANCE VISIT/ INSP. REQUIRED | NO. OF CRITICAL ITEMS |
|---|---|---|---|---|---|---|---|---|
| _4307-01_ | _06_ | _28_ | _07_ | OUT / IN | YES ☑ NO ☐ | | YES ___ NO ___ | _0_ |

CRITICAL ITEMS REQUIRING IMMEDIATE ACTION

## MANAGEMENT AND PERSONNEL

| | | |
|---|---|---|
| 01* | Assignment of Person in charge; Commissary used. Personnel with infections restricted, excluded. No discharges from eyes, nose, mouth. | 5 |
| 02* | Hands clean; properly washed. No bare hand contact; approved alternative. No eating, drinking, tobacco use. | 5 |
| 03* | Demonstration of knowledge: Approved course, other requirements met | +2 / 5 |
| 04 | Clean clothes; Hair restraints; Nails. Authorized personnel. Other. | 1 |

## FOOD

| | | |
|---|---|---|
| 05* | Safe; Source; Condition; Not adulterated; Shellstock tags; Compliance with plan/ROP. Other. | 5 |
| 06* | Potentially hazardous food meets temperature requirements during receiving, cooking, hot holding, cooling. Pasteurized eggs used if required. | 5 |
| 07* | Potentially hazardous food meets temperature requirements during cold holding. _41°F_ Time as a public health control used if required. Consumer Advisory used if required. | 5 |
| 08* | Food separated, protected from contamination. Tasting. Returned, reservice of food. | 5 |
| 09 | Cooling methods. Facilities to maintain product temperature. Plant food cooking. | 1 |
| 10 | Properly labeled; Original container. Records. Code date limits. | 1 |
| 11 | Thermometers provided, accurate, conspicuous. | ⟨1⟩ |
| 12 | Approved thawing methods used. | 1 |
| 13 | Food contamination prevented during storage, preparation, display, handling, other. | 1 |
| 14 | In use, between use, food/ice dispensing utensils properly stored. | 1 |

## EQUIPMENT, UTENSILS, AND LINENS

| | | |
|---|---|---|
| 15* | Equipment; food contact surfaces (non-cooking) clean; sanitized. Sanitization temperature, concentration, exposure. | 5 |
| 16* | Food contact surfaces characteristics. Single service/use used when required. | 4 |
| 17 | Cooking surfaces, non-food contact surfaces: clean. Frequency; Methods. | 1 |
| 18 | Food (ice), Non-food contact surfaces: constructed, cleanable, installed, located. | 1 |
| 19 | Warewashing facilities: designed, constructed, maintained, installed, located, operated. Accurate thermometers, Chemical test papers. | 1 |
| 20 | Linens properly stored, dried, handled. Laundry facilities used. | 1 |
| 21 | Wiping cloths; clean, use limitations, stored. | 1 |
| 22 | Storage, handling, drying of clean equipment, utensils. | 1 |
| 23 | Single service articles, storage, dispensing, wrapped, Use limitations. Gloves used properly. | 1 |

## WATER, PLUMBING, AND WASTE

| | | |
|---|---|---|
| 24* | Water source, safe, hot and cold under pressure provided. | 4 |
| 25* | Sewage, grease disposal; System approved; Flushed (mobile). | 4 |
| 26* | Cross connection; Back siphonage; Backflow. | 4 |
| 27* | Handwashing facilities: Toilets: Number, location. | 4 |
| 28 | Water supply, Waste disposal: Approved system (fixtures); materials, design, operation; maintenance. Other liquid wastes properly disposed. Service sink provided. | 1 |
| 29 | Handwashing facilities: Soap, towels/drying device, sign, use restrictions. | ⟨6⟩ |
| 30 | Toilet rooms constructed, supplied. | 1 |
| 31 | Refuse, recyclables, and returnables. Outdoor/Indoor storage area approved. Receptacles provided; covered. Approved refuse disposal method. | 1 |

## PHYSICAL FACILITIES

| | | |
|---|---|---|
| 32* | Food contamination from cleaning equipment prevented. | 4 |
| 33* | Presence of insects, rodents, other pests. Animals prohibited. | 4 |
| 34 | Pests control methods approved, used. Pest control devices serviced as required. | 1 |
| 35 | Premises, Free of litter, harborage. | 1 |
| 36 | Floors, walls, ceilings, attached equipment: clean. Outer openings protected. Surface characteristics, indoor, outdoor; Maintained. Cleaning frequency, dustless methods. Absorbent floor materials properly used. | 1 |
| 37 | Lighting, Ventilation: adequate. Ventilation system (filters), clean, operated. Lights shielded. | 1 |
| 38 | Dressing rooms provided. Employee designated areas properly located. Living/sleeping quarters separation. | 1 |
| 39 | Cleaning, maintenance tools properly stored. | 1 |

## POISONOUS OR TOXIC MATERIALS

| | | |
|---|---|---|
| 40* | Toxic or poisonous items; Medicines; First aid materials: Stored; Labeled; Used. | 4 |
| 41 | Other personal care/first aid items: Stored; Labeled. Toxic or poisonous materials separation. Non-toxic tracking powder. | 1 |

## OTHER

| | | |
|---|---|---|
| 42 | Permit, Report, Other properly posted. Administrative requirements, HACCP plan | 1 |

RECEIVED BY: Name _J.A. Roberson_   Title ___

INSPECTED BY: Name ___

REMARKS: _#29. Need towel at B all hand sinks / Need soap at one hand sink_
_#11 Need accurate thermometer in reach in refrigerator_

ADPH-FLP-103/Rev. 11-04-kw

# EXHIBIT 19

State of Alabama Department of Corrections
Jail Inspection Report




# STATE OF ALABAMA

## DEPARTMENT OF CORRECTIONS
Engineering Administrative Division
2265 Maron Spillway Road
Elmore, Alabama 36025
(205) 567-1556

# JAIL INSPECTION REPORT

Sheriff/Chief of Police __Jay Jones__      Jail __Lee County__
City __Opelika__                            Date __6-15 2007__
County __Lee__                              Time __11:05 AM__
Phone No. _____                    Inspector __Sidney McQueen__

This is to report conditions of your jail as of this date of inspection. Please carefully note and make needed corrections. These adjustments are necessary to bring your facility into compliance with the standards set forth in Title 14, Code of Alabama, 1975.

—CHECK MARK indicates most accurate description—

**WHAT GOVERNING BODY HAS SUPERVISORY POWER?**
City Council ____ County Commission ✓

**POPULATION:** 252 M 30~

STATE
W/M ____ B/M ____ W/F ____ B/F ____ TOTAL ____

COUNTY
W/M ____ B/M ____ W/F ____ B/F ____ TOTAL ____

CITY
W/M ____ B/M ____ W/F ____ B/F ____ TOTAL ____

FEDERAL
W/M ____ B/M ____ W/F ____ B/F ____ TOTAL ____

JUVENILES
W/M ____ B/M ____ W/F ____ B/F ____ TOTAL __200__

GRAND TOTAL ____

**JAIL CAPACITY:**
MALE _26_ FEMALE _3_ JUVENILE _0_ TOTAL _426_

1. Are Female Prisoners housed separately? ...... YES ___ NO ✓
2. Are separate quarters available for Juveniles? ... YES ___ NO ___ NONE ✓
3. Number of state inmates ON WAIVER ____

**JAIL EMPLOYEES:**
1. Number of Jailers ........................ ✓
2. Number of Matrons ..................... ✓
3. Other Employees ...................... ✓
4. Are Jailers POST Certified? ......... YES ✓ NO ___

**BUILDING:**

GENERAL APPEARANCE:
1. Exterior ........... Poor ___ Fair ___ Good ✓
2. Interior ........... Poor ___ Fair ___ Good ✓
3. Fence ........... Poor ___ Fair ___ Good ✓ None ___
4. Yard ........... Poor ___ Fair ___ Good ✓ None ___
5. Type of Construction: Brick ___ Cement ✓ Wood ___ Other ___
6. Year Constructed: 1989 & 2007
7. Types of Locking Devices: ......... Manual ✓ Electric ___
8. Condition of Locking Devices: Poor ___ Fair ___ Good ✓ None ___
9. Observation
10. Windows: ....... Poor ___ Fair ___ Good ___ None ___
11. Screens: ....... Poor ___ Fair ___ Good ___ None ✓
12. Grills: ....... Poor ___ Fair ___ Good ___ None ✓
13. Windows: ....... Poor ___ Fair ___ Good ✓ None ___
14. Cells: ....... Poor ___ Fair ___ Good ✓ None ___

**SAFETY FEATURES:**
1. Emergency Exits: ... Poor ___ Fair ___ Good ✓ None ___
2. Fire Apparatus: ... Poor ___ Fair ___ Good ✓ None ___
3. Stairways: ... Poor ___ Fair ___ Good ✓ None ___
4. Elevators: ... Poor ___ Fair ___ Good ___ None ✓

5. Is there an EMERGENCY (fire) EVACUATION plan POSTED? ... YES ___ NO ✓
6. Are Fire and Safety precautions observed? .......... YES ✓ NO ___
   If NOT, explain in Comments section.

**TRAINING:**
IN-SERVICE: ......... YES ___ NO ___
Other: _____

**ARE OPERATING PROCEDURES WRITTEN?** ......... YES ✓ NO ___

**IS THERE A PRINTED MANUAL?** ............ YES ___ NO ✓

**JAIL RECORDS:**
1. Arrest Record ............ YES ✓ NO ___
2. Are personal property and cash receipted? .......... YES ___ NO ✓
3. Visits ................. YES ___ NO ✓
4. Medical ............... YES ___ NO ✓
5. Commitment and Discharges ... YES ___ NO ✓
   Are Jail Records Adequate? ... YES ___ NO ✓
   Are Prisoners Fingerprinted? ... YES ___ NO ✓
   Are Prisoners Photographed? ... YES ___ NO ✓

**SECURITY:**
1. Is the jail reasonably secure? ............ YES ✓ NO ___
2. Are periodic inspections made of security facilities? ......... YES ✓ NO ___
3. Are firearms stored safely? ......... YES ✓ NO ___
   Where are they stored? __Lock Box__
4. Are there regulations prohibiting carrying of firearms into the Jail? ......... YES ✓ NO ___
5. KEY CONTROL:
   Are keys ever in possession of inmates? .......... YES ___ NO ✓
   Are keys properly stored and accounted for? .......... YES ✓ NO ___
6. How often are prisoners quarters visited? __Meals__
7. Is jailer on duty 24 hours daily? .......... YES ✓ NO ___
8. Are CHECKS conducted at night? .......... YES ✓ NO ___
   Are CHECKS logged? .......... YES ___ NO ✓
9. Are complete SHAKEDOWNS accomplished? .... YES ___ NO ___
10. Are periodic COUNTS conducted? .......... YES ___ NO ___

**INSPECTORS COMMENTS:**

New Addition    186 Males

* Video Visitation

600 Block will house Federal
Inmates  21

Pods Have Space with Tablet

New Section Has Kitchen And
Laundry.  Old Section Retains Laundry.

Old Kitchen will Be Renovated For    To Be
Medical Wing

Females will Remain in Old
Section of Jail - will Be Relocated
In A New    Open Bay    Area That will House 37
2 Other Areas will House Females
Total of 63

Improvements And Renovations Are
Being Accomplished In Old Section. Number
of Inmates Per Block Reduced

New Section Is Impressive !!!

Inspector's Signature

Time of Completion _____

Copy Received By:

SIGNATURE

SIGNATURE    Date    Office

Date    Office

Copy: State Fire Marshal ☐
       County Health Department ☐
Page 3 of 3

# EXHIBIT 20

Lee County Detention Center
Request Slip dated November 1, 2007

Lee County Detention Center
## INMATE REQUEST SLIP

MAJOR TOLBERT / SHERIFF JONES

408
**LOCATION**

Name JEFFERY B. SANFORD          Date 11-1-07

☐ Telephone Call     ☐ Doctor        ☐ Dentist        ☐ Time Sheet
☐ Special Visit      ☑ Personal Problem              ☐ Other

Briefly Outline Your Request. _Give To Jailer_    KEPT YELLOW COPY FOR RECORD

WAS SERVED SOME OLD STALE BREAD
FROM THE L.C.D.C. KITCHEN FOR BRKFT.
ON NOV 1, 07, BY SECOND SHIFT
THE OFFICER'S OBSERVED THE BREAD WAS
OLD ALSO, WITH MOLD. THE NEXT IT OCCURE
I WILL TRY TO KEEP IT FOR YOU TO SEE.
THE OFFICERS ARE SEEING IT, BUT DOING NOTHING
ABOUT IT NEITHER!

_Do Not Write Below This Line_ - For Reply Only

Received 11-2-07
    Officer are instructed that if there is any problem
with Food trays to write a report so that it
can be forward to Kitchen for correction. All bread
are served under direction of Cooks and if problem are
corrected prior to be sent to Pod or Housing units.

Approved _____ Denied _____ Collect Call 11-2-07

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To
Those The Request is Directed.

☐ Lieutenant        ☐ Chief Deputy        ☐ Sheriff

Date _____ Time Received _____

CORRECTION OFFICER _____

FORM: LCS-038 (6/99)